*Local Rule 81*

*Local Rules of Civil Procedure of the Western District of New York*

**Index of Documents Filed or Served in the
New York State Court Action**

| Exhibit | Document | Date Filed and/or Served |
|---------|----------|--------------------------|
| **B** | Summons & Verified Complaint | August 23, 2021 (filed) December 28, 2021 (served: City of Rochester) On or about December 31, 2021 (served: Todd Baxter) |
| **C** | Consent to Change Attorneys | November 10, 2021 (filed) |
| **D** | Notice of Appearance – Arthur Schwartz | November 10, 2021 (filed) |
| **E** | Affidavit of Service – City of Rochester | December 29, 2021 (filed) |
| **F** | Affidavit of Service – Monroe County | December 29, 2021 (filed) |
| **G** | Notice of Motion for Additional Time to Serve Process under CPLR 306B | December 29, 2021 (filed) |
| **H** | Affirmation of Nathan McMurray | December 29, 2021 (filed) |
| **I** | Affirmation of Arthur Schwartz | December 29, 2021 (filed) |
| **J** | RJI re: Notice of Motion | December 29, 2021 (filed) |
| **K** | Affidavit of Service – Todd Baxter | January 3, 2022 (filed) |
| **L** | Court Notice (Motion #1) | January 5, 2022 (filed) |
| **M** | Notice of Motion to Dismiss | January 18, 2022 (filed) |
| **N** | Affirmation of Spender L. Ash | January 18, 2022 (filed) |

| Exhibit | Document | Date Filed and/or Served |
|---------|----------|--------------------------|
| **O** | Exhibit A – Complaint | January 18, 2022 (filed) |
| **P** | Exhibit B – Emergency Order | January 18, 2022 (filed) |
| **Q** | Exhibit C – Plea Stipulation | January 18, 2022 (filed) |
| **R** | Memorandum of Law | January 18, 2022 (filed) |
| **S** | Court Notice (Motion #2) | January 25, 2022 (filed) |

# EXHIBIT B

MONROE COUNTY CLERK'S OFFICE                    THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2819772

Book    Page    CIVIL

Return To:                                      No. Pages:  26
ELLIOT DOLBY-SHIELDS
192 Lexington Avenue, Suite 802                 Instrument: EFILING INDEX NUMBER
New York, NY 10016

Control #:        202108240322
Index #:          E2021007848

Date: 08/24/2021

Hushla, Nicole                                  Time: 10:49:58 AM

The City of Rochester
Baxter, Todd

| | | |
|---|---|---|
| State Fee Index Number | $165.00 | |
| County Fee Index Number | $26.00 | |
| State Fee Cultural Education | $14.25 | |
| State Fee Records | $4.75 | Employee: MJ |
| Management | | |
| Total Fees Paid: | $210.00 | |

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

| | |
|---|---|
| NICOLE HUSHLA, | |
| Plaintiffs, | **SUMMONS** |
| -against- | |
| THE CITY OF ROCHESTER, a municipal entity, "JOHN DOE POLICE OFFICERS 1-200" (names and number of whom are unknown at present), TODD BAXTER, "RICHARD ROE SHERIFF'S DEPUTIES 1-200" (names and number of whom are unknown at present), and other unidentified members of the Rochester Police Department and Monroe County Sheriff's Office, | Index No.: |
| | The basis of venue is: Location of the incident |
| Defendants. | Plaintiff designates Monroe County as the place of trial. |

**To the above named Defendants:**

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

DATED: New York, New York
          August 23, 2021

Yours, etc.,

ROTH & ROTH, LLP
ELLIOT SHIELDS, ESQ.
Attorney for Plaintiff
192 Lexington Ave, Suite 802
New York, New York 10016
(212) 245-1020

EASTON THOMPSON
KASPEREK SHIFFRIN LLP
Donald Thompson
16 West Main Street, Suite 243

Rochester, New York 14614
Ph: (585) 423-8290


TO:
CITY OF ROCHESTER
CORPORATION COUNSEL
30 Church Street
Rochester, New York 14614

COUNTY OF MONROE
Monroe County Law Department
307 County Office Building
39 W. Main St.
Rochester, NY 14614

Case 6:22-cv-06039-FPG   Document 1-2   Filed 01/25/22   Page 7 of 127

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

NICOLE HUSHLA,

Plaintiffs,

-against-

THE CITY OF ROCHESTER, a municipal entity, "JOHN DOE POLICE OFFICERS 1-200" (names and number of whom are unknown at present), TODD BAXTER, "RICHARD ROE SHERIFF'S DEPUTIES 1-200" (names and number of whom are unknown at present), and other unidentified members of the Rochester Police Department and Monroe County Sheriff's Office,

Defendants.

INDEX NO.:

**VERIFIED COMPLAINT**
**[JURY TRIAL DEMANDED]**

Plaintiff, by her attorneys, ROTH & ROTH, LLP and EASTON THOMPSON KASPAREK SHIFFRIN LLP, complaining of the defendants, respectfully allege as follows:

I.    <b><u>PARTIES</u></b>

1.      Plaintiff NICOLE HUSHLA is a resident of the County of Monroe, State of New York.

2.      Defendant CITY OF ROCHESTER ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the RPD.

3.      Defendant CITY OF ROCHESTER ("CITY") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York. Defendant CITY maintains the City of Rochester Police Department, a duly authorized public authority

and/or police department, authorized to perform all functions of a police department. RPD acts as Defendant CITY's agent and Defendant CITY assumes the risks incidental to the maintenance of a police department and the employment of police officers.

4.      "JOHN DOE" ROCHESTER POLICE DEPARTMENT OFFICERS 1–200 (the names and numbers of which are currently unknown), were, at all times relevant to this Complaint, Police Officers with the RPD. At all relevant times, these defendants were acting within the scope of their employment with the CITY and RPD and under color of state law. They are sued in their individual capacities. John Doe RPD Officers are referred to collectively as "the RPD officers."

5.      Defendant TODD BAXTER ("Sheriff Baxter" or "BAXTER") was, at all times relevant herein, the duly elected Sheriff of the County of Monroe. At all relevant times, Defendant BAXTER was acting within the scope of his employment and under color of state law. He is sued in his individual and official capacity.

6.      "RICHARD ROE" MONROE COUNTY SHERIFF'S DEPUTIES 1–200 (the names and numbers of which are currently unknown), were, at all times relevant to this Complaint, Deputy Sheriffs with the Monroe County Sheriff's Office ("MCSO"). At all relevant times, these defendants were acting within the scope of their employment with the County and under Sheriff BAXTER and acting under color of state law. They are sued in their individual capacities. They are referred to collectively as "the Sheriff's Deputies." BAXTER is responsible for the training, supervision and discipline of the Defendant Sheriff's Deputies under state law.

### III. JURISDICTION

7.      This action falls within one or more of the exceptions as set forth in CPLR

Section 1602, involving intentional actions, as well as the defendant, and/or defendants, having

acted in reckless disregard for the safety of others, as well as having performed intentional acts.

8.      Ms. HUSHLA filed timely Notices of Claim against the City and County, in

compliance with the Municipal Law § 50.

9.      The CITY conducted Ms. HUSHLA's 50h hearing on May 27, 2021, and the

COUNTY waived 50-h hearing for Ms. HUSHLA.

10.     More than thirty (30) days have elapsed since service of said Notices of Claim

were filed and the City and County have failed to pay or adjust the claim.

11.     This action is being brought within a year of the event that gives rise to Ms.

HUSHLA's causes of action under New York State law and Plaintiffs have complied with all of

the statutory prerequisites for bringing this action.

## IV.  STATEMENT OF FACTS

### A.  Facts Common to All Causes of Action

12.     On March 23, 2020, Daniel Prude's family sought help from the Rochester Police

Department ("RPD") as Daniel was suffering an acute mental health crisis. Tragically, that call

for help ended with Daniel naked and handcuffed with his face covered by a "spit hood," as an

RPD officer pushed his head into the freezing asphalt for several minutes. RPD officers on the

scene mocked Daniel and chatted with each other while he asphyxiated. Daniel was declared

brain dead that night; he was taken off life support and died on March 30.

13.     When the video of RPD Officers killing Daniel Prude was finally made public on

September 2, 2020, it sparked nationwide outrage. In Rochester, thousands of people gathered to

mourn the loss of Black lives, demand the CITY finally end its racist and brutal policing practices, and call for new visions of public safety that value Black lives.

14.     On September 2-4, 2020, the RPD and MCSO defendants responded to peaceful protests with extreme violence—including the indiscriminate use of tear gas and pepper spray, 40 millimeter blunt-impact projectiles, thousands of pepper balls, flash-bang grenades and other supposedly "less-than-lethal" munitions.

15.     It was widely reporter in the news and in social media that numerous protesters sustained serious injuries as a result of the extreme violence used by RPD officers and Sheriff's Deputies on the nights of September 2-4, 2020, including the use of tear gas and other "less-than-lethal" weapons. Nevertheless, the CITY and BAXTER disregarded the fact that RPD officers and Sheriff's Deputies would again use excessive and unjustified force against protesters on September 5, 2020, and did not take any steps to train, supervise or discipline RPD officers or Sheriff's Deputies, or otherwise curb the violence on the part of RPD officers and Sheriff's Deputies and to protect the lives and safety of protesters on the night of September 5, 2020.

16.     On September 5, 2020, Ms. HUSHLA attended a peaceful protest in downtown Rochester. Ms. HUSHLA met up with the group near City Hall at approximately 10:00 p.m. and thereafter marched with the group towards the Public Safety Building. But during the march, protesters were met with an overwhelming presence of RPD officers, Sheriff's deputies and State Police in full riot gear with military grade weapons—including a bearcat tank—and police dogs.

17.     Ms. HUSHLA and the other protesters were stopped at the intersection of Broad Street and Exchange Blvd.

18.     At approximately 10:25 p.m., without cause or legal justification, the John Doe

RPD Officers and/or Richard Roe Sheriff's Deputies began attacking the crowd with "less

lethal" munitions, including pepper balls, tear gas, and flash bang grenades.

19.     Ms. HUSHLA inhaled a large amount of chemicals from the pepper balls, tear gas

and other chemical weapons that were deployed.

20.     Ms. HUSHLA was disoriented and terrified when flash bang grenades exploded

just feet from where she was standing.

21.     After the John Doe RPD Officers and/or Richard Roe Sheriff's Deputies began

attacking the crowd, Ms. HUSHLA attempted to comply with law enforcement orders to disperse

and leave the area.

22.     Ms. HUSHLA walked towards her car, which was parked on State Street near a

bar called the Spirit Room.

23.     At approximately 11:15 p.m., Ms. HUSHLA was present on State Street, north of

the intersection with Main Street, just south of the Holiday Inn, when she was shot in the face

with a tear gas cannister by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy from

her north on State Street.



24.     When she was shot in the face, Ms. HUSHLA was only near several other people, and nowhere near any "crowd" or "group".

25.      The John Doe RPD Officer and/or Richard Roe Sheriff's Deputy provided no warning prior to firing the tear gas canister that struck Ms. HUSHLA in the face.

26.     When Ms. HUSHLA was shot, she was video recording and live streaming the police response to the protesters.

27.     Upon information and belief, Ms. HUSHLA was targeted and shot in the face by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy in retaliation for exercising her First Amendment rights.

28.     Upon information and belief, Ms. HUSHLA was targeted and shot in the face by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy in retaliation for video recording the law enforcement response to the protests.

29.     Because Ms. HUSHLA was not with a crowd or group, it is clear that the John Doe RPD Officer and/or Richard Roe Sheriff's Deputy who launched the tear gas cannister at her was targeting her and intended to strike her.

30.     Upon information and belief, Ms. HUSHLA was targeted and shot in the face by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy in retaliation for video recording the law enforcement officers performing their duties in a public place.

31.     Ms. HUSHLA was not committing a crime or violation when she was shot in the face with a tear gas cannister by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy.

32.     Ms. HUSHLA was not threatening law enforcement or any other person when she was shot in the face with a tear gas cannister by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy.

33.     The John Doe RPD Officer and/or Richard Roe Sheriff's Deputy lacked cause or any legal justification for shooting Ms. HUSHLA with the tear gas cannister.

34.     As a result of being shot in the face with a tear gas cannister by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy, Ms. HUSHLA sustained serious injuries, including numerous broken bones in her nose and face, as well as lacerations to her face and lips and permanent facial scarring.

35.     As a result of the exposure to tear gas and other chemical weapons, Ms. HUSHLA has suffered menstrual irregularities.

      B.  **Negligence of the City And RPD in Failing to Properly Train RPD Officers On The Proper Handling of First Amendment Assemblies, and In Failing to Supervise and Discipline Officers Who Used Excessive Force Against Protesters**.

36.     The violation of Ms. HUSHLA's rights is attributable to the CITY and RPD's disregard of many years of notice, criticism, and other relevant data points, both internal and external, related to its unconstitutional policing of similar protests.

37.     Similarly, BAXTER has deliberately disregarded the fact that peaceful protests and lawful demonstrations have occurred and will continue to occur in Monroe County, and

instead has defined such lawful First Amendment activities as "civil disturbances" that mut be policed in the same manner as "violent mobs" or "riots."

38.     Since at least the 2009, the RPD and MCSO has failed to appropriately train its officers on the proper handling of First Amendment assemblies.

39.     Upon information and belief, the core training provided by the CITY and BAXTER related to protest response is based on crowd management and disorder control tactics for policing large-scale civil disorder and riots.

40.     According to the CITY's website, the RPD's Mobile Field Force (MFF) is a "specially trained and equipped team providing a rapid, organized and disciplined response to civil disorder [and] crowd control."

41.     The MFF was the RPD's primary unit tasked with policing the peaceful protests in the wake of George Floyd and Daniel Prude in May and September 2020, respectively, and on the night of September 5-6, 2020 specifically.

42.     Upon information and belief, the MFF's training and guidelines treat "disorders" as military engagements and copies military tactics and focus on tactics designed to *deter, disperse, and demoralize* groups, such as disorder control formations and mass use of chemical weapons.

43.     Such disperse and demoralize tactics have persisted through the present as exemplified by the experiences of Ms. HUSHLA.

44.     Upon information and belief, the MFF's "civil disorder" training and guidelines were never meant to be guidelines for the policing of lawful First Amendment assemblies such as demonstrations—only for large-scale civil disorder such as riots.

45.     However, neither the MFF's "civil disorder" training and guidelines, nor, upon information and belief, any related RPD training, contain meaningful direction on the core First, Fourth, or Fourteenth Amendment principles that must guide constitutional policing of First Amendment assemblies.

46.     For example, upon information and belief, there is virtually no RPD training—and certainly no *meaningful* RPD training—focusing on how to utilize the tactics described in the MFF's "civil disorder" training and guidelines without infringing on the constitutional rights of protesters, such as how to make probable cause determinations or the requirements of providing an alternative avenue of protest, meaningful time and a path of egress when issuing a dispersal order, and the like.

47.     Many MFF members have histories of engaging in the kinds of misconduct complained of herein, among other places, by CRB complaints, PSS investigations and in lawsuits.

48.     Examples of the RPD's unreasonable and discriminatory use of force at prior lawful protests include:

- In October 2009, an anti-war protest in Rochester resulted in several physical confrontations, with two protesters receiving stitches at the hospital after RPD officers pushed them face-first to the ground, and 12 protesters arrested for exercising their First Amendment rights. The peaceful march, held in the early evening, was interrupted by approximately forty RPD vehicles. Within three minutes of giving the order to disperse, RPD officers began to shove and hit protesters with clubs and deploy pepper spray. Protesters described RPD officers wading through the crowd to

pick out Black students to arrest. A press videographer who was filming one such arrest was wrestled to the ground by police and himself arrested.

- In May 2015, Katrina Perkins was protesting police brutality on a public street in a residential neighborhood, where two of her daughters and six of her grandchildren reside. Though Ms. Perkins was peacefully demonstrating, RPD officers violently seized and arrested her and then charged her with disorderly conduct and disruption. Those charges were dismissed two months later. Police brutality is a deeply personal issue to Ms. Perkins, as her daughter Lashedica was the 13-year-old shot three times by former-Deputy Chief Simmons in 2005.

- In July 2016, in Rochester as across the nation, people took to the streets to uphold the sanctity of Black lives and call for an end to racist policing. In response, the RPD deployed, beat, shoved, and pepper sprayed protesters. As one described it: "I started to turn and they tackled me to the ground.…They're beating citizens for no reason whatsoever. I wasn't doing anything. I was taking pictures." RPD officers, in keeping with their pattern and practice, particularly targeted Black protesters with unlawful force, including Black journalists: Carlet Cleare and Justin Carter of WHAM-TV were both handcuffed and detained, even though Ms. Cleare was wearing a WHAM-TV shirt and they identified themselves as members of the press. Over the course of one weekend, Rochester had more arrests at its BLM protest (74) than the rest of the nation combined.

49.     Despite the wealth of evidence of RPD members' historical brutality against protesters, Defendant City has ignored, and/or failed to utilize, relevant information, including

information gleaned from reports and lawsuits, as well as other data points, to identify deficiencies in RPD training as it relates to constitutionally compliant protest policing.

50. In fact, following the 2016 protest, the RPD and Mayor Lovely Warren's office stated the police handled themselves appropriately.

51. When questioned by public officials, former RPD Chief La'Ron Singletary stated that he did not review the RPD's actions at the 2016 protest in developing the RPD's strategy for responding to protests in 2020.

52. In summary, upon information and belief, the RPD's exclusive focus on deterring, dispersing, and demoralizing in trainings related to policing protests, coupled with the failure to train on specific, relevant aspects of constitutional policing of protests, let alone how to encourage or facilitate protests—despite having received clear notice that RPD policing of protests has caused the systemic violations of protesters' constitutional rights for years—demonstrates the City's negligence in failing to train and supervise RPD Officers in properly and lawfully policing protests to ensure that protesters' rights under the First Amendment, Fourth Amendment, Fourteenth Amendment, and other, related rights are not violated. As a result of the City's negligence, Plaintiff NICOLE HUSHLA was injured and harmed, as described herein.

53. Similarly, prior to 2020, BAXTER had received clear notice that peaceful demonstrations have occurred and will continue to occur in Monroe County, and that without proper training, his Deputy Sheriffs would violate individuals' constitutional rights and endanger the life and safety of protesters, such as Plaintiff NICOLE HUSHLA.

54. Nevertheless, BAXTER, upon information and belief, took no steps to train his Sheriff's Deputies on lawfully policing protests and other First Amendment activities.

55.     Instead, BAXTER, pursuant to County policy, trains his Sheriff's Deputies that a "civil disturbance" is defined as both "peaceful demonstrations or acts of violence." Thus, BAXTER, pursuant to County policy, explicitly conflates peaceful protests with violent riots.

56.     Upon information and belief, BAXTER does not provide any training to Sheriff's Deputies on drawing a meaningful distinction between "peaceful demonstrations" and "violent mobs". For example, in its "Hazard Mitigation Plan," the County states that, "Many civil unrest incidents are spontaneous and can occur at any time, rendering prediction of probability of future occurrences difficult. When these incidents occur, they can become extremely disruptive and difficult to control. Assumedly, civil unrest incidents including marches, protests, demonstrations, and gatherings will continue to occur throughout Monroe County."

57.     According to County policy, peaceful demonstrates are discouraged because of the perceived negative impacts on property resources, real estate and the economy; again, this is a result of BAXTER falsely conflating "peaceful demonstrations" with "acts of violence."

58.     Upon information and belief, BAXTER does not provide any training to Sheriff's Deputies on how to encourage and support individuals engaging in "peaceful demonstrations" to ensure that their constitutional rights are not inhibited by law enforcement.

59.     Upon information and belief, BAXTER does not provide any training to Sheriff's Deputies on making a meaningful distinction between how Sheriff's Deputies are trained and instructed on policing "peaceful demonstrations" versus "violent mobs".

60.     Instead, County policy states that, "[m]any protests intended to be peaceful demonstrations to the public and the government can escalate into general chaos." Thus, upon information and belief, BAXTER trains his Sheriff's Deputies to police peaceful demonstrations in the same manner as they would a violent mob.

61.     Like the RPD, upon information and belief, BAXTER trains Sheriff's Deputies exclusively on deterring, dispersing, and demoralizing protests and peaceful demonstrations.

62.     In June 2020, several Monroe County Legislators called on BAXTER to implement new protest training to ensure the safety of protesters at Black Lives Matter demonstrations. The legislators drafted a letter to County Executive Adam Bello and BAXTER in which they made a number of requests related to public safety and the safety of protesters, and closed by stating, "*Once again, we believe the safety of both protesters, motorists, and law enforcement is of the utmost importance. Right here in Monroe County and across the Nation, we have seen the negative results when leaders are reactionary rather than proactive. Please be sure that a plan is in place to ensure the mutual safety of all involved.*"

63.     BAXTER claimed the letter was a "political stunt" and refused to provide any specific details regarding how Sheriff's Deputies would ensure the safety of Black Lives Matter protesters during peaceful demonstrations.

64.     As a result of the BAXTER's negligence, Plaintiff NICOLE HUSHLA was injured and harmed, as described herein.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Excessive Force**
*Pursuant to 42 U.S.C. § 1983*

65.     All preceding and subsequent paragraphs are incorporated by reference.

66.     Defendants' actions towards Plaintiff constitutes excessive force in violation of 4th Amendment of the United States Constitution and 42 U.S.C. § 1983.

67.     Defendants used force against Ms. HUSHLA that was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted them

68.    It was objectively unreasonable for the John Doe RPD Officers and/or Richard Roe Sheriffs Deputies to shoot Ms. HUSHLA in the face with a tear gas cannister.

69.    The types and levels of force Defendants used against Ms. HUSHLA were in contravention of, or inconsistent with, related RPD policies and/or training.

70.    As a result of the acts and omissions of the RPD officers and/or Sheriff's Deputies, Defendants deprived Ms. HUSHLA of her federal, state, and/or other legal rights; caused Ms. HUSHLA bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Ms. HUSHLA to expend costs and expenses; and/or otherwise damaged and injured Ms. HUSHLA.

71.    Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

72.    The actions of the RPD officers and Sheriff's Deputies were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CLAIM FOR RELIEF
### Assault and Battery
### *Pursuant to New York State Law*

73.    All preceding and subsequent paragraphs are incorporated by reference.

74.    RPD officers and/or Sheriff's Deputies battered Ms. HUSHLA by subjecting her to various chemical weapons

75.    RPD officers and/or Sheriff's Deputies shot Ms. HUSHLA in the face with a tear gas cannister.

76.    Ms. HUSHLA was not threatening the law enforcement officers or any other person at any time.

77.     By the aforedescribed conduct, defendants, their agents, servants and employees, acting within the scope of their employment, intentionally, willfully and maliciously battered Plaintiff Ms. HUSHLA, when they, in a hostile and/or offensive manner struck Plaintiff without her consent and with the intention of causing harmful and/or offensive bodily contact to the Plaintiff and caused such battery.

78.     The RPD Officers were at all times agents, servants, and employees acting within the scope of their employment by the Defendant CITY and the RPD, which are therefore responsible for their conduct.

79.     The Defendant CITY, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

80.     At no point during the incidents described herein did the circumstances necessitate or support the above applications of force utilized by the defendant RPD officers and/or Sheriff's Deputies against Plaintiff.

81.     Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

82.     The actions of the RPD officers and Sheriff's Deputies were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### **THIRD CLAIM FOR RELIEF**
**First Amendment Infringements, Including First Amendment Retaliation**
***Pursuant to 42 U.S.C. § 1983***

83.     All preceding and subsequent paragraphs are incorporated by reference.

84.     In committing the acts and omissions complained of herein, Defendants acted under color of state law—individually, in concert, and through a conspiracy—to deprive Plaintiff of the rights protected by the First Amendment to the United States Constitution.

85.    Defendants (a) retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment, and (b) imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in falsely arresting Plaintiff, in subjecting Plaintiff to excessive force, in selectively enforcing laws and regulations against Plaintiff, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

86.    Defendants engaged in those and other acts and omissions complained of herein in retaliation for Plaintiff's perceived protected speech and/or conduct.

87.    Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

88.    Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

89.    As a result of the foregoing, Plaintiff suffered injuries and damages.

90.    The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### FOURTH CLAIM FOR RELIEF
**Failure To Intervene**
*Pursuant to 42 U.S.C. § 1983*

91.    All preceding and subsequent paragraphs are incorporated by reference.

92.    The individual defendants all had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights by the other Defendant RPD officers and/or Sheriff's Deputies.

93.     The individual defendants failed to intervene on Plaintiff's behalf despite having had realistic opportunities to do so.

94.     The individual defendants failed to intervene on Plaintiff's behalf despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

95.     As a result of the aforementioned conduct of the individual defendants, Plaintiff's constitutional rights were violated.

96.     As a result, Plaintiff was damaged, injured and harmed, and seeks compensation in an amount to be determined at trial.

97.     Defendant RPD officers and/or Sheriff's Deputies' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

**FIFTH CLAIM FOR RELIEF**
**Negligence**
**(Against BAXTER)**

98.     All preceding and subsequent paragraphs are incorporated by reference.

99.     Defendant BAXTER was negligent in the training, supervision and discipline of the Defendant Sheriff's Deputies, who were provided, upon information and belief, no training for policing protests, engaging in peaceful crowd control, or how to properly and safely use the "less lethal" weapons; or the training they were provided was inadequate.

100.     BAXTER had a duty to ensure that his Sheriff's Deputies were properly trained in policing peaceful protests and other large demonstrations, to keep the participants safe promote First Amendment expression.

101.    BAXTER knew or should have known that County policy conflated peaceful demonstrations with violent mobs, and that in the absence of proper training, his Sheriff's Deputies would use unreasonable and excessive force against peaceful demonstrators.

102.    BAXTER knew or should have known that exposure to chemical weapons such as pepper balls, tear gas and OC spray can cause serious adverse health effects, including menstrual irregularities.

103.    BAXTER breached his duty to keep demonstrators safe by, among other things, training his Sheriff's Deputies to police peaceful demonstrations in the same manner as they would police violent mobs.

104.    BAXTER breached his duty to keep demonstrators safe by, among other things, training his Sheriff's Deputies to use chemical weapons indiscriminately against protesters.

105.    Ms. Hushla's injuries were a direct and proximate result BAXTER negligently training his deputies in how to lawfully police First Amendment activities.

106.    Moreover, despite their use of extreme and excessive violence against protesters on September 2-4, 2020, BAXTER was negligent failing to supervise or discipline any of his Sheriff's Deputies related to any force used protesters on those nights prior to Plaintiff's injury. BAXTER's negligence was the direct and proximate cause of Plaintiff's injuries.

107.    Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## SIXTH CLAIM FOR RELIEF
### Negligence
### (Against the CITY)

108.    All preceding and subsequent paragraphs are incorporated by reference.

109.    Defendant CITY was negligent in the training, supervision and discipline of the Defendant RPD officers, who were provided, upon information and belief, no training for policing protests, engaging in peaceful crowd control, or how to properly and safely use the "less lethal" weapons; or the training they were provided was inadequate.

110.    The CITY had a duty to ensure that RPD officers were properly trained in policing peaceful protests and other large demonstrations, to keep the participants safe promote First Amendment expression.

111.    The CITY knew or should have known that its training was inadequate; that in the past, numerous RPD officers had seriously injured peaceful demonstrators; and that in the absence of proper training, his RPD officers would use unreasonable and excessive force against peaceful demonstrators.

112.    The CITY knew or should have known that exposure to chemical weapons such as pepper balls, tear gas and OC spray can cause serious adverse health effects, including menstrual irregularities.

113.    The CITY breached his duty to keep demonstrators safe by, among other things, training RPD officers to police peaceful demonstrations in the same manner as they would police violent mobs.

114.    The CITY breached its duty to keep demonstrators safe by, among other things, training RPD officers to use chemical weapons indiscriminately against protesters.

115.     Ms. Hushla's injuries were a direct and proximate result of the CITY negligently training RPD officers in how to lawfully police First Amendment activities.

116.     Moreover, despite their use of extreme and excessive violence against protesters on September 2-4, 2020, the CITY was negligent failing to supervise or discipline any of RPD officers related to any force used protesters on those nights prior to Plaintiff's injury. The CITY's negligence was the direct and proximate cause of Plaintiff's injuries.

117.     Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

### SEVENTH CLAIM FOR RELIEF
**Negligence**
**(Against the Individual Defendants)**

118.     All preceding and subsequent paragraphs are incorporated by reference.

119.     The Defendant RPD officers and Sheriff's Deputies, their agents, servants, employees, officers and deputies were negligent using the "less lethal" military grade weapons and chemical weapons against Plaintiff, which was the direct and proximate cause of Plaintiff's injuries.

120.     The Defendant RPD officers and Sheriff's Deputies had a duty to permit the protesters to engage in First Amendment Activities and to protect them from harm or physical violence.

121.     The Defendant RPD officers and Sheriff's Deputies had a duty to not use force against any individual protester in the absence of individualized cause or legal justification for the use of force.

122.    The Defendant RPD officers and Sheriff's Deputies breached that duty by firing "less lethal" munitions and chemical weapons into "groups" of protesters based on perceived "group conduct," without making any individualized determination that they were legally justified to use force against any individual in the perceived "group."

123.    The breach of that duty by the Defendant RPD officers and Sheriff's Deputies was the direct and proximately cause of Ms. HUSHLA's serious injuries described herein.

124.    Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

125.    Defendant RPD officers and/or Sheriff's Deputies' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

<u>**EIGHTH CLAIM FOR RELIEF**</u>
**Respondeat Superior**
**(Against the City)**

126.    All preceding and subsequent paragraphs are incorporated by reference.

127.    The RPD officers, and other individuals who joined with them in their wrongful conduct, were, at all times relevant to this Count, were employees and agents of the Defendant CITY. Each of those defendants and persons was acting within the scope of his or her employment, and their acts and omissions, as alleged above, are therefore directly chargeable to the CITY under the doctrine of *respondeat superior.*

128.    Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

**WHEREFORE** and in light of the foregoing, Plaintiff demands judgment on all claims for relief:

a.  Empanel a jury;

b.  Award compensatory and punitive damages;

c.  The Plaintiff demands the foregoing relief jointly and severally against all of the defendants in an amount in excess of the jurisdiction of all lower Courts, except that the punitive damages demands are, as a matter of law, not recoverable against a municipality and therefore are not made against the City;

d.  Award Plaintiff reasonable attorney's fees and costs, and interest pursuant to 42 U.S.C. § 1988; and

e.  Such other and further relief as the court may deem just and proper.

Dated: New York, New York          Respectfully Submitted,
August 23, 2021

ROTH & ROTH, LLP.
EASTON THOMPSON KASPEREK SHIFFRIN LLP

Elliot Dolby Shields
Co-counsel for Plaintiffs
192 Lexington Avenue, Suite 802
New York, New York 10024
(212) 425-1020

Donald Thompson
Co-counsel for Plaintiffs
16 West Main Street, Suite 243
Rochester, New York 14614
Ph: (585) 423-8290

# ATTORNEY'S VERIFICATION

**ELLIOT DOLBY SHIELDS,** an attorney duly admitted to practice before the Courts of

the State of New York, affirms the following to be true under the penalties of perjury:

I am associated with Roth & Roth, LLP, attorneys for the Plaintiff, I have read the annexed

**VERIFIED COMPLAINT** and know the contents thereof, based on the files maintained in my

office, and the same are true to my knowledge, except those matters therein which are stated to be

alleged upon information and belief, and as to those matters I believe them to be true. My belief, as

to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent

information contained in my files. This verification is being made by me and not my client because

I maintain my office in a different county than where my client resides.


DATED: New York, New York
      August 23, 2021

_____
ELLIOT DOLBY SHIELDS

EXHIBIT C

MONROE COUNTY CLERK'S OFFICE                    THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2897019

Book    Page    CIVIL

Return To:                                       No. Pages: 2
ARTHUR Z. SCHWARTZ
Advocates for Justice                            Instrument: MISCELLANEOUS DOCUMENT
225 Broadway, Suite 1902
New York, NY 10007                               Control #:        202111100001
                                                 Index #:          E2021007848

                                                 Date: 11/10/2021

Hushla, Nicole                                   Time: 12:23:34 AM

The City of Rochester
Baxter, Todd

Total Fees Paid:                    $0.00

                                                 Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

                    JAMIE ROMEO

              MONROE COUNTY CLERK

STATE OF NEW YORK
COURT OF CLAIMS
------------------------------------------------------------------- X
JOY ARMSTRONG, et al., and NICOLE HUSHLA,

                     Claimants,

               v.

THE STATE OF NEW YORK,

                     Respondent.
------------------------------------------------------------------- X

**CONSENT TO CHANGE
ATTORNEYS**

IT IS HEREBY CONSENTED that the law firms of Advocates for Justice, Chartered

Attorneys, 225 Broadway, Suite 1902, New York, New York 10007, and the Aboushi Law Firm,

1441 Broadway, New York, New York 10018, be and hereby are substituted as attorneys of

record for Nicole Hushla, in the above-captioned proceeding, in place and instead of the

undersigned outgoing attorney for Nicole Hushla, Roth & Roth LLP and Easton Thompson

Kasperek Shiffrin LLP.

Dated: October 22, 2021

_____
Elliot Shields, Esq.
for the Outgoing Attorneys
ROTH & ROTH LLP
192 Lexington Avenue, Suite 802
New York, New York 10016
    and
EASTON THOMPSON KASPEREK
SHIFFRIN LLP
16 West Main Street, Suite 243
Rochester, New York 14614

_____
Nicole Hushla, Claimant

_____
Notary Public

_____
Arthur Z. Schwartz
for the Incoming Attorneys
ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400
aschwartz@afjlaw.com
    and
THE ABOUSHI LAW FIRM
Tahanie Aboushi
1441 Broadway, 5th Floor
New York, New York 10018
(212) 391-8500
tahanie@aboushi.com

PATRICK WOLFF
Notary Public  State of New York
No. 01WO6382368
Qualified in Monroe County
My Commission Exp. 10/22/2022

EXHIBIT D

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2897020

Book    Page    CIVIL

Return To:
ARTHUR Z. SCHWARTZ
Advocates for Justice
225 Broadway, Suite 1902
New York, NY 10007

No. Pages: 2

Instrument: MISCELLANEOUS DOCUMENT

Control #:        202111100002
Index #:          E2021007848

Date: 11/10/2021

Hushla, Nicole

Time: 12:23:36 AM

The City of Rochester
Baxter, Todd

Total Fees Paid:                    $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE
-----------------------------------------------------------------X
NICOLE HUSHLA,                                          Index No. E2021007848

                                    Plaintiff,          **NOTICE OF APPEARANCE**

                    v.

THE CITY OF ROCHESTER, etc., et al.,

                                    Defendants.
-----------------------------------------------------------------X

       PLEASE TAKE NOTICE that the undersigned appears on behalf of Plaintiff Nicole

Hushla in this matter.

Dated: November 9, 2021


                                    _____
                                      Arthur Z. Schwartz
                                      ADVOCATES FOR JUSTICE,
                                      CHARTERED ATTORNEYS
                                      Attorneys for Nicole Hushla
                                      225 Broadway, Suite 1902
                                      New York, New York 10007
                                      (212) 285-1400
                                      aschwartz@afjlaw.com

# EXHIBIT E

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2944665

Book    Page    CIVIL

No. Pages: 2

Return To:
ARTHUR Z. SCHWARTZ
Advocates for Justice
225 Broadway, Suite 1902
New York, NY 10007

Instrument: AFFIDAVIT OF SERVICE

Control #:          202112290729
Index #:            E2021007848

Date: 12/29/2021

Hushla, Nicole

Time: 2:00:59 PM

The City of Rochester
Baxter, Todd

Total Fees Paid:                    $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

Case 6:22-cv-06039-FPG   Document 1-2   Filed 01/25/22   Page 38 of 127

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

---

**Plaintiff / Petitioner:**

NICOLE HUSHLA

**Defendant / Respondent:**

THE CITY OF ROCHESTER, etc., et al.,

**AFFIDAVIT OF SERVICE**

**Index No:**
**E2021007848**

---

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and works at 2604 Elmwood Ave #330, Rochester, NY 14618.  That on Tue, Dec 28 2021 AT 04:50 PM AT 30 Church Street , Rochester, NY 14614 deponent served the within CONSENT TO CHANGE ATTORNEYS, SUMMONS AND COMPLAINT, NOTICE OF APPEARANCE, NOTICE OF APPEARANCE on City of Rochester Law Department

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☐ **Corporation:** _____ a defendant, therein named, by delivering a true copy of each to _____ personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be _____ thereof.

☒ **Suitable Person:** by delivering thereat, a true copy of each to Chris Noone a person of suitable age and discretion.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____

☐ **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper properly addressed to said defendant at defendant's last known residence, _____ , and depositing said wrapper in a post office, official depository under the exclusive care and custody of the United States Post Office, department, with New York State. Mailed on _____ .

☐ **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**

| | | | | | |
|---|---|---|---|---|---|
| Age:  50 | Ethnicity:  Caucasian | | Gender:  Male | Weight:  160 | |
| Height:  6'0" | Hair:  Brown | Eyes:  Blue | Relationship:  Municipal attorney | | |
| Other  Authorized | | | | | |

Sworn to before me on   December 28, 2021

/s/ John W. Donnelly

John W. Donnelly

/s/

Notary Public

# EXHIBIT F

MONROE COUNTY CLERK'S OFFICE                    THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2944666

Book    Page    CIVIL

No. Pages: 2

Return To:
ARTHUR Z. SCHWARTZ                              Instrument: AFFIDAVIT OF SERVICE
Advocates for Justice
225 Broadway, Suite 1902
New York, NY 10007                              Control #:        202112290730
                                                Index #:          E2021007848

                                                Date: 12/29/2021

Hushla, Nicole                                  Time: 2:01:01 PM

The City of Rochester
Baxter, Todd

Total Fees Paid:                    $0.00

                                                Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK                                                        COUNTY OF MONROE

| Plaintiff / Petitioner: | | **AFFIDAVIT OF SERVICE** |
|---|---|---|

NICOLE HUSHLA

**Index No:**

**Defendant / Respondent:**

**E2021007848**

THE CITY OF ROCHESTER, etc., et al.,

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and works at <u>2604 Elmwood Ave #330, Rochester, NY 14618</u>. That on <u>Tue, Dec 28 2021</u> AT <u>04:25 PM</u> AT <u>39 West Main Street, Rochester, NY 14614</u> deponent served the within <u>CONSENT TO CHANGE ATTORNEYS, SUMMONS AND COMPLAINT, NOTICE OF APPEARANCE, NOTICE OF APPEARANCE</u> on <u>Monroe County Law Department</u>

|   |   |
|---|---|
| ☐ | **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein. |
| ☐ | **Corporation:** _____ a defendant, therein named, by delivering a true copy of each to _____ personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be _____ thereof. |
| ☒ | **Suitable Person:** by delivering thereat, a true copy of each to <u>Charles Johnson</u> a person of suitable age and discretion. |
| ☐ | **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____ |
| ☐ | **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper properly addressed to said defendant at defendant's last known residence, _____, and depositing said wrapper in a post office, official depository under the exclusive care and custody of the United States Post Office, department, with New York State. Mailed on _____. |
| ☐ | **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes. |

**Description:**

| | | | | | | |
|---|---|---|---|---|---|---|
| Age: 50 | Ethnicity: Caucasian | | Gender: Male | | Weight: 215 | |
| Height: 6'1" | Hair: Brown | | Eyes: Brown | | Relationship: Deputy Attorney | |
| Other  Authorized | | | | | | |

Sworn to before me on   December 28, 2021

/s/ John W. Donnelly                                          /s/

John W. Donnelly                                          Notary Public

EXHIBIT G

Case 6:22-cv-06039-FPG Document 1-2 Filed 01/25/22 Page 43 of 127

MONROE COUNTY CLERK'S OFFICE                    THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2946540

Book    Page    CIVIL

Return To:                                      No. Pages: 3
ARTHUR Z. SCHWARTZ
Advocates for Justice                           Instrument: NOTICE OF MOTION
225 Broadway, Suite 1902
New York, NY 10007                              Control #:        202201030329
                                                Index #:          E2021007848

                                                Date: 01/03/2022

Hushla, Nicole                                  Time: 11:24:57 AM

The City of Rochester
Baxter, Todd

 Motion Filing Fee                  $45.00

Total Fees Paid:                    $45.00
                                                Employee: ARC

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

        JAMIE ROMEO

    MONROE COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE
-----------------------------------------------------------------X
NICOLE HUSHLA,                                    Index No. E2021007848

                         Plaintiff,          **NOTICE OF MOTION FORADDITIONAL TIME TO SERVE PROCESS UNDER CPLR 306B**

              v.

THE CITY OF ROCHESTER, etc., et al.,

                    Defendants.
-----------------------------------------------------------------X

       PLEASE TAKE NOTICE that upon the Affirmation of Arthur Z. Schwartz, dated December 29, 2021, and the Affirmation of Nathan McMurray, date December 29, 2021, Plaintiff shall move this Court, on January 11, 2022, at 9:30a.m., at the Courthouse located at 99 Exchange Boulevard, Hall of Justice, Rochester, New York, 14614, under CPLR 306(b), for an order, nunc pro tunc, extending Plaintiff's time to file service of process on all defendants.

Dated: December 29, 2021

                               ADVOCATES FOR JUSTICE,
                               CHARTERED ATTORNEYS

                               By: _____*Arthur Z. Schwartz*_____
                               225 Broadway, Suite 1902
                               New York, New York 10007
                               (212) 285-1400
                               aschwartz@afjlaw.com

                               THE ABOUSHI LAW FIRM
                               By: Tahanie Aboushi
                               1441 Broadway, 5th Floor
                               New York, New York 10018
                               (212) 391-8500
                               tahanie@aboushi.com

                               Attorneys for Plaintiff

TO:
CITY OF ROCHESTER
Law Department
30 Church Street Room 400
Rochester, NY 14614

TODD BAXTER
Defendant ProSe
130 South Plymouth Avenue
Rochester, NY 14614

**AFFIRMATION OF SERVICE:**

Arthur Z. Schwartz, an attorney at law, affirms under penalty of perjury, that om December

29, 2021, a Copy of this Nice of Motion, and the supporting affirmations, was served by First Class

US Mail on the above listed Defendants at the addresses shown above.

Dated: December 29, 2021

*Arthur Z. Schwartz*

EXHIBIT H

Case 6:22-cv-06039-FPG  Document 1-2  Filed 01/25/22  Page 47 of 127

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2944888

Book    Page    CIVIL

Return To:
ARTHUR Z. SCHWARTZ
Advocates for Justice
225 Broadway, Suite 1902
New York, NY 10007

No. Pages:  3

Instrument: MISCELLANEOUS DOCUMENT

Control #:          202112290963
Index #:            E2021007848

Date: 12/29/2021

Hushla, Nicole

Time: 3:51:48 PM

The City of Rochester
Baxter, Todd

Total Fees Paid:                        $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

Case 6:22-cv-06039-FPG   Document 1-2   Filed 01/25/22   Page 48 of 127

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE
----------------------------------------------------------------X
NICOLE HUSHLA,                                    **Index No. E2021007848**

                      Plaintiff,          **AFFIRMATION OF**
                                                     **NATHAN MCMURRAY**

       v.

THE CITY OF ROCHESTER, etc., et al.,

                      Defendants.
----------------------------------------------------------------X

NATHAN MCMURRAY, an attorney at law duly admitted to the Bar of the State of New York, affirms under penalty of perjury, as follows:

1. I am of counsel to Advocates for Justice Chartered Attorneys, counsel to Plaintiff. I reside in Erie County.

2. Our firm took over from the original counsel in this case. I had been in the midst of drafting an Amended Complaint when I realized, on December 22, 2021 that time to serve the Summons and Complaint may have run under CPLR 306 on December 23, 2021. So I made a plan to serve the City of Rochester and Todd Baxter, the defendants, on December 23, 2021.

3. On December 23, 2021, at 500 AM, as I was preparing to leave my home to go to Rochester to serve the papers, in the early morning darkness, I slipped on the stairs and fell through the banister.

4. My family immediately took me for emergency care, since I was having trouble breathing. X-rays revealed that I had broken several ribs. I spent Christmas Eve and Christmas in bed, taking prescribed pain medication. I was almost totally unable to move, and not in shape to attend to any legal work. I continue to have difficulty breathing because of the pressure caused by my broken ribs.

5. After the Christmas weekend my firm arranged to have papers served on the Defendants.

The City of Rochester was served on December 28, 2021 (see filed affidavit of service), and since Todd Baxter, Monroe County Sherriff closed his office early on December 28, 2021, we served the County of Monroe. On December 29, 2021 process was served on Todd Baxter. That affidavit of service has also been filed.

6. Given the circumstances we submit that the court should grant the extra days (only 2-3 business days), *nunc pro tunc*, to complete service of the Summons and Complaint.

Dated: December 29, 2021

_____Nathan McMurray_____

# EXHIBIT I

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2944889

Book    Page    CIVIL

No. Pages:  4

Return To:
ARTHUR Z. SCHWARTZ
Advocates for Justice
225 Broadway, Suite 1902
New York, NY 10007

Instrument: MISCELLANEOUS DOCUMENT

Control #:        202112290964
Index #:          E2021007848

Date: 12/29/2021

Hushla, Nicole

Time: 3:51:50 PM

The City of Rochester
Baxter, Todd

Total Fees Paid:                    $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

-----------------------------------------------------------------X

NICOLE HUSHLA,                                        **Index No. E2021007848**

                              Plaintiff,              **AFFIRMATION OF**
                                                      **ARTHUR SCHWARTZ**

                v.

THE CITY OF ROCHESTER, etc., et al.,

                              Defendants.

-----------------------------------------------------------------X

ARTHUR Z. SCHWARTZ, an attorney at law duly admitted to the Bar of the State of New York, affirms under penalty of perjury, as follows:

1. I the Principal Attorney for Advocates for Justice Chartered Attorneys, counsel to Plaintiff.

2. The record indicates that the Summons and Compliant in this matter was filed on August 23, 2021. The complaint includes common law claims against defendants for assault, battery, negligence, and infringement of US Constitutional rights arising out of Plaintiff having been shot in the face, at close range, with a projectile fired by an office, we believe, in the Rochester Police Department. A proper Notice of Claim had been filed and sufficient time had elapsed so as to allow filing of this lawsuit.

3. At the time our firm had substituted in as counsel, on November 10, 2021, the Summons and Complaint had not been served. It was our determination that further research needed to be done into the actions of the Rochester Police Department and the Monroe County Sherriff's Department on the date Plaintiff was injured, and on the several days before that, related to protests arising out of the Daniel Prude homicide.

4. After the research had been completed, as established by the Affirmation of Nathan McMurray, he had been in the midst of drafting an Amended Complaint when we realized, on December 22, 2021 that time to serve the Summons and Complaint may have run under CPLR

306 on December 23, 2021. So Attorney McMurray, who leaves near Buffalo, made a plan to serve the City of Rochester and Todd Baxter, the defendants, on December 23, 2021.

3. On December 23, 2021, at 500 AM, as he was preparing to leave his home to go to Rochester to serve the papers, in the early morning darkness, I slipped on the stairs and fell through the banister.

4. Attorney McMurray's family immediately took me for emergency care, since I was having trouble breathing. X-rays revealed that he had broken several ribs. He spent Christmas Eve and Christmas in bed, taking prescribed pain medication. He was almost totally unable to move, and not in shape to attend to any legal work. He continued to have difficulty breathing because of the pressure caused by my broken ribs.

5. After the Christmas weekend I arranged to have papers served on the Defendants. The City of Rochester was served on December 28, 2021 (see filed affidavit of service), and since Todd Baxter, Monroe County Sherriff closed his office early on December 28, 2021, we served the County of Monroe. On December 29, 2021 process was served on Todd Baxter. That affidavit of service has also been filed.

6. Given the circumstances we submit that the court should grant the extra days (only 2-3 business days), *nunc pro tunc*, to complete service of the Summons and Complaint. We make this request, rather than just dismissing, because it is possible that we might lose the ability to litigate the intentional tort claims if we do not continue with the current pleading. We will be filing a Motion for Leave to File An Amended Complaint shortly.

7. It is well settled that the determination to grant such "[a]n extension of time for service is a matter within the court's discretion" *Leader v. Maroney, Ponzini & Spencer*, 97 N.Y.2d 95, 101 [2001]; *see Moss v. Bathurst*, 87 A.D.3d 1373, 1374 [4th Dept. 2011]). Factors the court may consider in making that determination include petitioner's "diligen[t efforts at service] or lack thereof, along with ... [the] expiration of the [s]tatute of [l]imitations, the meritorious nature of the

cause of action, the length of delay in service, the promptness of a [petitioner's] request for the extension of time, and prejudice to the [respondent]" *Leader*, 97 N.Y.2d at 105-106; *Delaware Operations Associates LLC v New York State Department of Health*, 187 AD3d 1560 (4 Dept. 2020).

8. Here there was a good explanation for the failure to serve on time, including an awful accident, a diligent effort to serve on the second business day after the accident (the first business day was Christmas eve), and an immediate request for relief under CPLR 306(b). There is also the potential for the Statute of Limitations to run on one of Plaintiff's claims, Under *Leader,* and the Fourth Department precedent, we submit that this case is ideal for the Court to exercise its discretion. We set this up as a *nunc pro tunc* application because we wanted to get the process served as soon as possible, to give counsel for the defendants an opportunity to weigh in, and to demonstrate our efforts to act diligently.

WHEREFORE Plaintiff request that this Court grant the additional time to serve, *nunc pro tunc.*

Dated: December 29, 2021

*Arthur Z. Schwartz*

EXHIBIT J

MONROE COUNTY CLERK'S OFFICE      THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2945137

Book   Page   CIVIL

Return To:           No. Pages: 3

ARTHUR Z. SCHWARTZ

Advocates for Justice      Instrument: RJI (REQUEST FOR JUDICIAL

225 Broadway, Suite 1902    INTERVENTION)

New York, NY 10007

Control #:      202112300065

Index #:      E2021007848

Date: 12/30/2021

Hushla, Nicole         Time: 9:23:24 AM

The City of Rochester

Baxter, Todd

RJI Fee            $95.00

Total Fees Paid:       $95.00

Employee: ARC

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



# REQUEST FOR JUDICIAL INTERVENTION

Monroe Supreme COURT, COUNTY OF Monroe

UCS-840
(rev. 07/29/2019)

Index No: E2021007848          Date Index Issued:  08/24/2021

| | For Court Use Only: |
|---|---|
| | IAS Entry Date |
| | |
| | Judge Assigned |
| | |
| | RJI Filed Date |
| | |

**CAPTION** Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

Nicole Hushla

Plaintiff(s)/Petitioner(s)

-against-

The City of Rochester, Todd Baxter

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING:** Check only one box and specify where indicated.

**COMMERCIAL**
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (specify): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**REAL PROPERTY:** Specify how many properties the application includes: _____
- ☐ Condemnation
- ☐ Mortgage Foreclosure (specify):  ☐ Residential  ☐ Commercial
  Property Address: _____

  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*

- ☐ Tax Certiorari - Section:          Block:          Lot:
- ☐ Tax Foreclosure
- ☐ Other Real Property (specify): _____

**OTHER MATTERS**
- ☐ Certificate of Incorporation/Dissolution  [see *NOTE* in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (specify): _____

**MATRIMONIAL**
- ☐ Contested

  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum (UCS-840M).*

  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**TORTS**
- ☐ Asbestos
- ☐ Child Victims Act
- ☐ Environmental (specify): _____
- ☐ Medical, Dental, or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (specify): _____
- ☐ Other Negligence (specify): _____
- ☐ Other Professional Malpractice (specify): _____
- ☒ Other Tort (specify):  Police Misconduct

**SPECIAL PROCEEDINGS**
- ☐ CPLR Article 75 (Arbitration)   [see *NOTE* in **COMMERCIAL** section]
- ☐ CPLR Article 78 (Body or Officer)
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 (Kendra's Law)
- ☐ MHL Article 10 (Sex Offender Confinement-Initial)
- ☐ MHL Article 10 (Sex Offender Confinement-Review)
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (specify): _____
- ☐ Other Special Proceeding (specify): _____

**STATUS OF ACTION OR PROCEEDING:** Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | | |
|---|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☒ | ☐ | If yes, date filed: | 08/23/2021 |
| Has a summons and complaint or summons with notice been served? | ☒ | ☐ | If yes, date served: | 12/28/2021 |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: | |

**NATURE OF JUDICIAL INTERVENTION:** Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental, or Podiatric Malpractice    Date Issue Joined: _____
- ☒ Notice of Motion    Relief Requested: Extend - Time    Return Date: 01/11/2022
- ☐ Notice of Petition    Relief Requested: _____    Return Date: _____
- ☐ Order to Show Cause    Relief Requested: _____    Return Date: _____
- ☐ Other Ex Parte Application    Relief Requested: _____
- ☐ Poor Person Application
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Writ of Habeas Corpus
- ☐ Other (specify): _____

| **RELATED CASES:** List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | | | |
|---|---|---|---|---|
| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
| None | | | | |
| | | | | |
| | | | | |
| | | | | |

| **PARTIES:** | | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | |
|---|---|---|---|---|
| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant; 3rd party plaintiff, etc.) | Attorneys and/or Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance<br>For each defendant, indicate insurance carrier, if applicable. |
| ☐ | Name: Hushla, Nicole<br><br>Role(s): Plaintiff/Petitioner | ARTHUR SCHWARTZ, ADVOCATES FOR JUSTICE, Advocates for Justice 225 Broadway, Suite 1902, New York, NY 10007, 917-923-8136, aschwartz@advocatesny.com | ☒ YES  ☐ NO | |
| ☒ | Name: The City of Rochester<br><br>Role(s): Defendant/Respondent | 30 Church Street, Rochester, NY  14614 | ☐ YES  ☒ NO | |
| ☐ | Name: Baxter, Todd<br><br>Role(s): Defendant/Respondent | MARIA RODI, Monroe County Law Department, 39 W. Main Street , Rochester, NY  14614, 585-753-1495, mariarodi@monroecounty.gov | ☐ YES  ☒ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER  RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:    12/29/2021
_____

1146265
_____
Attorney Registration Number

ARTHUR Z SCHWARTZ
_____
Signature

ARTHUR Z SCHWARTZ
_____
Print Name

*This form was generated by NYSCEF*

EXHIBIT K

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2947101

Book    Page    CIVIL

No. Pages: 2

Return To:
ARTHUR Z. SCHWARTZ
Advocates for Justice
225 Broadway, Suite 1902
New York, NY 10007

Instrument: AFFIDAVIT OF SERVICE

Control #:        202201030965
Index #:          E2021007848

Date: 01/03/2022

Hushla, Nicole

Time: 3:53:20 PM

The City of Rochester
Baxter, Todd

Total Fees Paid:                    $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF MONROE

| | |
|---|---|
| Plaintiff / Petitioner: | **AFFIDAVIT OF SERVICE** |
| NICOLE HUSHLA | Index No: |
| Defendant / Respondent: | E2021007848 |
| THE CITY OF ROCHESTER, etc., et al., | |

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and works at 2604 Elmwood Ave #330, Rochester, NY 14618.  That on Wed, Dec 29 2021 AT 01:16 PM AT 130 S. Plymouth Ave, Rochester, NY 14614 deponent served the within CONSENT TO CHANGE ATTORNEYS, SUMMONS AND COMPLAINT, NOTICE OF APPEARANCE, NOTICE OF APPEARANCE on Todd K. Baxter, Sheriff

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☐ **Corporation:** _____ a defendant, therein named, by delivering a true copy of each to _____ personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be _____ thereof.

☒ **Suitable Person:** by delivering thereat, a true copy of each to Alexander Hinckley a person of suitable age and discretion.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____

☒ **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper properly addressed to said defendant at defendant's last known residence, 130 S. Plymouth Ave, Rochester, NY 14614, and depositing said wrapper in a post office, official depository under the exclusive care and custody of the United States Post Office, department, with New York State. Mailed on Wed, Dec 29 2021.

☐ **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Age: 40 | | Ethnicity: Caucasian | | Gender: Male | | Weight: 150 | |
| Height: 5'7" | | Hair: Black | | Eyes: Brown | | Relationship: Paralegal | |
| Other: Authorized | | | | | | | |

Sworn to before me on 12 31 2021

_____
John W. Donnelly

_____
Notary Public

HEATHER I. HEFNER
Notary Public - State of New York
No. 01HE6375330
Qualified in Monroe County
My Commission Exp. 05/14/2022

EXHIBIT L

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**
**JUDGE ARK, JOHN J**
**MOTION JUDGE ARK, JOHN J**



**Nicole Hushla**

- v. -

**The City of Rochester et al**

| | |
|---|---|
| **Index No.** | **E2021007848** |
| **Motion** | **1** |

## COURT NOTICE

This matter has been assigned to Hon. John J. Ark and will be heard at Special Term on:

Thursday, at 10:00 a.m. on submission, unless oral argument is specifically requested.

Opposition papers, and/or a cross-motion, shall be received by the Court no later than January 28, 2022, at 4:00 p.m.  A reply shall be received no later that February 14, 2022, at 4:00 p.m.

Date: 1/5/2022
Filed by: Donna M. Brongo

DATED 01/05/2022                                       FILED By Donna M. Brongo

# EXHIBIT M

MONROE COUNTY CLERK'S OFFICE                THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2963499

Book    Page    CIVIL

Return To:                                              No. Pages: 3
Workers Compensation Board of the State of New York

Instrument: NOTICE OF MOTION OR CROSS MOTION

Control #:        202201191140
Index #:          E2021007848

Date: 01/19/2022

Hushla, Nicole                                          Time: 2:48:05 PM

The City of Rochester
Baxter, Todd

 Motion Filing Fee               $45.00

Total Fees Paid:                 $45.00
                                                        Employee: CW

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

**SUPREME COURT          STATE OF NEW YORK**
**COUNTY OF MONROE**
_____

**NICOLE HUSHLA**

                                                **Plaintiff,**                      **NOTICE OF MOTION**
        **v.**                                                    **TO DISMSS**

**CITY OF ROCHESTER, et al.**                      **Index No.:  E2021007848**

                                              **Defendants.**
_____

| | |
|---|---|
| MOTION BY: | City Defendants |
| DATE, TIME & PLACE: | _____ |
| RELIEF REQUESTED: | An Order for Motion to Dismiss |
| GROUNDS: | CPLR §3211 |
| LOCATION: | Monroe County Supreme Court<br>545 Hall of Justice<br>Rochester, NY 14614 |
| SUPPORTING PAPERS: | Affidavit of Spencer L. Ash, Esq. with Exhibit and Memorandum of Law |
| RESPONDING PAPERS: | Pursuant to CPLR §2214(b), any and all answering affidavits and/or opposing papers must be served upon the undersigned no later than 7 days prior to the return date hereof, if these papers are served upon you at least 12 days prior to the return date, otherwise at least 2 days prior to the return date. |

DATED:  January 18, 2022           LINDA S. KINGSLEY
                                    CORPORATION COUNSEL

                                    BY:s/Spencer L. Ash, Esq.,
                                        Attorneys for Defendants

NYSCEF DOC. NO. 12
Case 6:22-cv-06039-FPG   Document 1-2   Filed 01/25/22   Page 67 of 127

30 Church Street, Room 400A City Hall
Rochester, New York 14614
Telephone: (585) 428-6699


TO:    Elliot Dolby-Shields, Esq.
        192 Lexington Avenue, Suite 802
        New York, NY 10016

EXHIBIT N

**SUPREME COURT          STATE OF NEW YORK**
**COUNTY OF MONROE**
_____

**NICHOLE HUSHLA**

|  |  |  |
|---|---|---|
| | **Plaintiff,** | **AFFIRMATION OF SPENCER L. ASH, ESQ. IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS.** |
| **v.** | | |
| **CITY OF ROCHESTER, et al.** | | **Index No.:  E2021007848** |
| | **Defendants.** | |

_____

       **SPENCER ASH**, an attorney duly admitted to practice law before the Court, makes this Affirmation under penalty of perjury, CPLR Rule 3211:

       1.      I am an attorney with the City of Rochester's Department of Law, attorneys for City Defendants.  I am admitted to practice law before the courts of the State of New York.

       2.      I respectfully submit this Affirmation on behalf of the City Defendants in support of their Motion to Dismiss.  The information set forth in this Affirmation is based upon my personal knowledge, a review of the proceedings in this action, and a review of relevant case law.

       3.      A Complaint was served upon City Defendants alleging that claims of *inter alia*, Assault, Battery and Negligent Supervision/Discipline and Failure to Intervene.  Exhibit A.

       4.      Plaintiff alleges that the protests of which he was a participant were peaceful and that he was at all times acting lawfully.

       5.      However, that allegation is demonstrably false and the violent actions of protestors throughout the relevant time period is a well-documented matter of public record.[1]

_____

[1] https://www.nytimes.com/2020/09/09/nyregion/rochester-protests-federal-prosecution.html

6.      The Complaint admits Plaintiff was blocking intersections with protestors and on September 5, 2020 violated a constitutional curfew by remaining on the streets among multiple individuals at 1:00am.  (See Exhibit B, Emergency Order).

7.      Plaintiff is also part of a cadre of protestors currently suing the City for protest related injuries.  One of those protestors has stipulated to the following facts concerning the protests:

> b.      During the month of September 2020, there were periods of civil unrest in the City of Rochester in response to incidents involving the deaths of George Floyd and Daniel Prude after encounters with law enforcement officers. There were nights of violent protests that resulted in property damage and looting, and injury to Rochester Police Department (RPD) officers. On September 4, 2020, a group of protesters damaged property and turned over tables at two restaurants, causing numerous patrons to leave. On September 5, 2020, a group of approximately 1,500 protesters blocked an intersection in the City of Rochester for hours, during which time some of the protesters hurled rocks, bottles, lit fireworks, and other objects at police officers, and pointed lasers at police officers, while the police officers were manning metal barricades and engaging in crowd control at the intersection. In addition, one protester struck a police officer in the head with a wooden shield. In connection with the protests on September 5, 2020, law enforcement shut down Exit 14 on Interstate 490 in the City of Rochester for approximately eight hours and the State Street exit on the Inner Loop in the City of Rochester for approximately an hour. On the evening of September 8, 2020, a group of approximately 400 protesters again blocked an intersection in the City of Rochester, and at least one member of the group pointed lasers in the eyes of several police officers who were positioned in the area of the Public Safety Building (PSB). The defendant was not physically present during the protests in Rochester between September 4, 2020, and September 24, 2020, but the defendant was aware of them.

(See Exhibit C, plea agreement).

---

https://www.justice.gov/usao-wdny/pr/rochester-resident-who-posted-molotov-cocktail-recipe-social-media-during-protests
https://www.whec.com/rochester-new-york-news/peaceful-protest-over-daniel-prudes-death-turns-violent-overnight/5852083/
https://www.democratandchronicle.com/story/news/2020/09/12/protests-rochester-ny-daniel-prude-11-straight-days-free-the-people-roc/5782445002/

2

8.      Moreover, Plaintiff alleges that both RPD Officers and County Sherriff's Deputies were responsible for their injuries, but do not specify which agency or individuals used force against him.

9.      Additionally, besides a general commentary about a public protest in 2009, an individual "protesting in 2015, and a public protest in 2016 the Complaint fails to provide any plausible facts regarding lack of training, supervision or discipline with to protests.

10.     Finally, Plaintiff has articulated no plausible basis for First Amendment Claims in light of the stipulated disorder and violence surrounding the subject protests, as well as the per se violations of the referenced Emergency Order.

11.     City Defendant stipulates that all officers known to have participated in duties associated with the subject events were acting in their lawful capacities as City of Rochester Police Officers during all relevant periods.


        **WHEREFORE**, the Complaint should be dismissed in its entirety and with prejudice.


Dated: January 18, 2022           **LINDA S. KINGSLEY, CORPORATION COUNSEL**

                                  _____S/Spencer L. ASH_____
                                  BY: Spencer L. Ash, Esq., *of Counsel*
                                  Attorneys for Defendant
                                  City Hall Room 400A, 30 Church Street
                                  Rochester, New York 14614
                                  (585) 428-6699

3

# EXHIBIT O

FILED: MONROE COUNTY CLERK 01/18/2022 02:36 PM

MONROE COUNTY CLERK'S OFFICE                    THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2819772

Book    Page    CIVIL

Return To:                                      No. Pages: 26
ELLIOT DOLBY-SHIELDS
192 Lexington Avenue, Suite 802                 Instrument: EFILING INDEX NUMBER
New York, NY 10016

Control #:        202108240322
Index #:          E2021007848

Date: 08/24/2021

Hushla, Nicole                                  Time: 10:49:58 AM

The City of Rochester
Baxter, Todd

| | |
|---|---|
| State Fee Index Number | $165.00 |
| County Fee Index Number | $26.00 |
| State Fee Cultural Education | $14.25 |
| State Fee Records | $4.75 |  Employee: MJ
| Management | |
| | |
| Total Fees Paid: | $210.00 |

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



INDEX NO. E2021007848

FILED: MONROE COUNTY CLERK 01/18/2022 02:36 PM

NYSCEF DOC. NO. 14

RECEIVED NYSCEF: 01/18/2022

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 08/23/2021

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF MONROE

NICOLE HUSHLA,

                                                    Plaintiffs,

                    -against-

THE CITY OF ROCHESTER, a municipal entity, "JOHN
DOE POLICE OFFICERS 1-200" (names and number of
whom are unknown at present), TODD BAXTER,
"RICHARD ROE SHERIFF'S DEPUTIES 1-200" (names
and number of whom are unknown at present), and other
unidentified members of the Rochester Police Department
and Monroe County Sheriff's Office,

                                                    Defendants.

RECEIVED

2021 DEC 28 P 4: 57

CITY OF ROCHESTER
LAW DEPARTMENT

**SUMMONS**

Index No.:

The basis of venue is:
Location of the incident

Plaintiff designates Monroe
County as the place of trial.

**To the above named Defendants:**

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

DATED: New York, New York
          August 23, 2021

Yours, etc.,

ROTH & ROTH, LLP
ELLIOT SHIELDS, ESQ.
Attorney for Plaintiff
192 Lexington Ave, Suite 802
New York, New York 10016
(212) 245-1020

EASTON THOMPSON
KASPEREK SHIFFRIN LLP
Donald Thompson
16 West Main Street, Suite 243

NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 08/23/2021

Rochester, New York 14614
Ph: (585) 423-8290

TO:
CITY OF ROCHESTER
CORPORATION COUNSEL
30 Church Street
Rochester, New York 14614

COUNTY OF MONROE
Monroe County Law Department
307 County Office Building
39 W. Main St.
Rochester, NY 14614

INDEX NO. E2021007848
FILED: MONROE COUNTY CLERK 01/18/2022 02:36 PM
NYSCEF DOC. NO. 14
NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 01/18/2022
RECEIVED NYSCEF: 08/23/2021

Page 76 of 127

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF MONROE

NICOLE HUSHLA,

Plaintiffs,

-against-

THE CITY OF ROCHESTER, a municipal entity, "JOHN DOE POLICE OFFICERS 1-200" (names and number of whom are unknown at present), TODD BAXTER, "RICHARD ROE SHERIFF'S DEPUTIES 1-200" (names and number of whom are unknown at present), and other unidentified members of the Rochester Police Department and Monroe County Sheriff's Office,

Defendants.

RECEIVED

2021 DEC 28 P 4: 59

CITY OF ROCHESTER
LAW DEPARTMENT

INDEX NO.

**VERIFIED COMPLAINT**
**[JURY TRIAL DEMANDED]**

Plaintiff, by her attorneys, ROTH & ROTH, LLP and EASTON THOMPSON KASPAREK SHIFFRIN LLP, complaining of the defendants, respectfully allege as follows:

I.      **PARTIES**

1.      Plaintiff NICOLE HUSHLA is a resident of the County of Monroe, State of New York.

2.      Defendant CITY OF ROCHESTER ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the RPD.

3.      Defendant CITY OF ROCHESTER ("CITY") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York. Defendant CITY maintains the City of Rochester Police Department, a duly authorized public authority

NYSCEF DOC. NO. 1                                      RECEIVED NYSCEF: 08/23/2021

and/or police department, authorized to perform all functions of a police department. RPD acts as

Defendant CITY's agent and Defendant CITY assumes the risks incidental to the maintenance of

a police department and the employment of police officers.

4.       "JOHN DOE" ROCHESTER POLICE DEPARTMENT OFFICERS 1–200 (the

names and numbers of which are currently unknown), were, at all times relevant to this

Complaint, Police Officers with the RPD. At all relevant times, these defendants were acting

within the scope of their employment with the CITY and RPD and under color of state law. They

are sued in their individual capacities. John Doe RPD Officers are referred to collectively as "the

RPD officers."

5.       Defendant TODD BAXTER ("Sheriff Baxter" or "BAXTER") was, at all times

relevant herein, the duly elected Sheriff of the County of Monroe. At all relevant times,

Defendant BAXTER was acting within the scope of his employment and under color of state

law. He is sued in his individual and official capacity.

6.       "RICHARD ROE" MONROE COUNTY SHERIFF'S DEPUTIES 1–200 (the

names and numbers of which are currently unknown), were, at all times relevant to this

Complaint, Deputy Sheriffs with the Monroe County Sheriff's Office ("MCSO"). At all relevant

times, these defendants were acting within the scope of their employment with the County and

under Sheriff BAXTER and acting under color of state law. They are sued in their individual

capacities. They are referred to collectively as "the Sheriff's Deputies." BAXTER is responsible

for the training, supervision and discipline of the Defendant Sheriff's Deputies under state law.

### III. JURISDICTION

INDEX NO. E2021007848
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 01/18/2022
RECEIVED NYSCEF: 08/23/2021

7.      This action falls within one or more of the exceptions as set forth in CPLR

Section 1602, involving intentional actions, as well as the defendant, and/or defendants, having

acted in reckless disregard for the safety of others, as well as having performed intentional acts.

8.      Ms. HUSHLA filed timely Notices of Claim against the City and County, in

compliance with the Municipal Law § 50.

9.      The CITY conducted Ms. HUSHLA's 50h hearing on May 27, 2021, and the

COUNTY waived 50-h hearing for Ms. HUSHLA.

10.     More than thirty (30) days have elapsed since service of said Notices of Claim

were filed and the City and County have failed to pay or adjust the claim.

11.     This action is being brought within a year of the event that gives rise to Ms.

HUSHLA's causes of action under New York State law and Plaintiffs have complied with all of

the statutory prerequisites for bringing this action.

## IV. STATEMENT OF FACTS

### A. Facts Common to All Causes of Action

12.     On March 23, 2020, Daniel Prude's family sought help from the Rochester Police

Department ("RPD") as Daniel was suffering an acute mental health crisis. Tragically, that call

for help ended with Daniel naked and handcuffed with his face covered by a "spit hood," as an

RPD officer pushed his head into the freezing asphalt for several minutes. RPD officers on the

scene mocked Daniel and chatted with each other while he asphyxiated. Daniel was declared

brain dead that night; he was taken off life support and died on March 30.

13.     When the video of RPD Officers killing Daniel Prude was finally made public on

September 2, 2020, it sparked nationwide outrage. In Rochester, thousands of people gathered to

FILED: MONROE COUNTY CLERK 01/18/2022 02:36 PM
Case 6:20-cv-06690-FPG Document 22 Filed 01/18/22 Page 79 of 127
NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 08/23/2021

mourn the loss of Black lives, demand the CITY finally end its racist and brutal policing practices, and call for new visions of public safety that value Black lives.

14. On September 2-4, 2020, the RPD and MCSO defendants responded to peaceful protests with extreme violence—including the indiscriminate use of tear gas and pepper spray, 40 millimeter blunt-impact projectiles, thousands of pepper balls, flash-bang grenades and other supposedly "less-than-lethal" munitions.

15. It was widely reporter in the news and in social media that numerous protesters sustained serious injuries as a result of the extreme violence used by RPD officers and Sheriff's Deputies on the nights of September 2-4, 2020, including the use of tear gas and other "less-than-lethal" weapons. Nevertheless, the CITY and BAXTER disregarded the fact that RPD officers and Sheriff's Deputies would again use excessive and unjustified force against protesters on September 5, 2020, and did not take any steps to train, supervise or discipline RPD officers or Sheriff's Deputies, or otherwise curb the violence on the part of RPD officers and Sheriff's Deputies and to protect the lives and safety of protesters on the night of September 5, 2020.

16. On September 5, 2020, Ms. HUSHLA attended a peaceful protest in downtown Rochester. Ms. HUSHLA met up with the group near City Hall at approximately 10:00 p.m. and thereafter marched with the group towards the Public Safety Building. But during the march, protesters were met with an overwhelming presence of RPD officers, Sheriff's deputies and State Police in full riot gear with military grade weapons—including a bearcat tank—and police dogs.

17. Ms. HUSHLA and the other protesters were stopped at the intersection of Broad Street and Exchange Blvd.

FILED: MONROE COUNTY CLERK 01/18/2022 02:36 PM
INDEX NO. E2021007848

FILED: MONROE COUNTY CLERK 01/18/2022 02:36 PM

NYSCEF DOC. NO. 1

NYSCEF DOC. NO. 11

Case 6:20-cv-06690-FPG Document 42-2 Filed 01/19/22 Page 80 of 127

RECEIVED NYSCEF: 01/18/2022

RECEIVED NYSCEF: 08/23/2021

18. At approximately 10:25 p.m., without cause or legal justification, the John Doe RPD Officers and/or Richard Roe Sheriff's Deputies began attacking the crowd with "less lethal" munitions, including pepper balls, tear gas, and flash bang grenades.

19. Ms. HUSHLA inhaled a large amount of chemicals from the pepper balls, tear gas and other chemical weapons that were deployed.

20. Ms. HUSHLA was disoriented and terrified when flash bang grenades exploded just feet from where she was standing.

21. After the John Doe RPD Officers and/or Richard Roe Sheriff's Deputies began attacking the crowd, Ms. HUSHLA attempted to comply with law enforcement orders to disperse and leave the area.

22. Ms. HUSHLA walked towards her car, which was parked on State Street near a bar called the Spirit Room.

23. At approximately 11:15 p.m., Ms. HUSHLA was present on State Street, north of the intersection with Main Street, just south of the Holiday Inn, when she was shot in the face with a tear gas cannister by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy from her north on State Street.

NYSCEF DOC. NO. 14
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 01/18/2022
RECEIVED NYSCEF: 08/23/2021



24.     When she was shot in the face, Ms. HUSHLA was only near several other people, and nowhere near any "crowd" or "group".

25.      The John Doe RPD Officer and/or Richard Roe Sheriff's Deputy provided no warning prior to firing the tear gas canister that struck Ms. HUSHLA in the face.

26.     When Ms. HUSHLA was shot, she was video recording and live streaming the police response to the protesters.

27.     Upon information and belief, Ms. HUSHLA was targeted and shot in the face by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy in retaliation for exercising her First Amendment rights.

28.     Upon information and belief, Ms. HUSHLA was targeted and shot in the face by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy in retaliation for video recording the law enforcement response to the protests.

29.     Because Ms. HUSHLA was not with a crowd or group, it is clear that the John Doe RPD Officer and/or Richard Roe Sheriff's Deputy who launched the tear gas cannister at her was targeting her and intended to strike her.

NYSCEF DOC. NO. 1                                                            RECEIVED NYSCEF: 08/23/2021

30.      Upon information and belief, Ms. HUSHLA was targeted and shot in the face by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy in retaliation for video recording the law enforcement officers performing their duties in a public place.

31.      Ms. HUSHLA was not committing a crime or violation when she was shot in the face with a tear gas cannister by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy.

32.      Ms. HUSHLA was not threatening law enforcement or any other person when she was shot in the face with a tear gas cannister by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy.

33.      The John Doe RPD Officer and/or Richard Roe Sheriff's Deputy lacked cause or any legal justification for shooting Ms. HUSHLA with the tear gas cannister.

34.      As a result of being shot in the face with a tear gas cannister by a John Doe RPD Officer and/or Richard Roe Sheriff's Deputy, Ms. HUSHLA sustained serious injuries, including numerous broken bones in her nose and face, as well as lacerations to her face and lips and permanent facial scarring.

35.      As a result of the exposure to tear gas and other chemical weapons, Ms. HUSHLA has suffered menstrual irregularities.

B.  **Negligence of the City And RPD in Failing to Properly Train RPD Officers On The Proper Handling of First Amendment Assemblies, and In Failing to Supervise and Discipline Officers Who Used Excessive Force Against Protesters**.

36.      The violation of Ms. HUSHLA's rights is attributable to the CITY and RPD's disregard of many years of notice, criticism, and other relevant data points, both internal and external, related to its unconstitutional policing of similar protests.

37.      Similarly, BAXTER has deliberately disregarded the fact that peaceful protests and lawful demonstrations have occurred and will continue to occur in Monroe County, and

instead has defined such lawful First Amendment activities as "civil disturbances" that mut be

policed in the same manner as "violent mobs" or "riots."

38.      Since at least the 2009, the RPD and MCSO has failed to appropriately train its

officers on the proper handling of First Amendment assemblies.

39.      Upon information and belief, the core training provided by the CITY and

BAXTER related to protest response is based on crowd management and disorder control tactics

for policing large-scale civil disorder and riots.

40.      According to the CITY's website, the RPD's Mobile Field Force (MFF) is a

"specially trained and equipped team providing a rapid, organized and disciplined response to

civil disorder [and] crowd control."

41.      The MFF was the RPD's primary unit tasked with policing the peaceful protests

in the wake of George Floyd and Daniel Prude in May and September 2020, respectively, and on

the night of September 5-6, 2020 specifically.

42.      Upon information and belief, the MFF's training and guidelines treat "disorders"

as military engagements and copies military tactics and focus on tactics designed to *deter,*

*disperse, and demoralize* groups, such as disorder control formations and mass use of chemical

weapons.

43.      Such disperse and demoralize tactics have persisted through the present as

exemplified by the experiences of Ms. HUSHLA.

44.      Upon information and belief, the MFF's "civil disorder" training and guidelines

were never meant to be guidelines for the policing of lawful First Amendment assemblies such

as demonstrations—only for large-scale civil disorder such as riots.

45.     However, neither the MFF's "civil disorder" training and guidelines, nor, upon information and belief, any related RPD training, contain meaningful direction on the core First, Fourth, or Fourteenth Amendment principles that must guide constitutional policing of First Amendment assemblies.

46.     For example, upon information and belief, there is virtually no RPD training—and certainly no *meaningful* RPD training—focusing on how to utilize the tactics described in the MFF's "civil disorder" training and guidelines without infringing on the constitutional rights of protesters, such as how to make probable cause determinations or the requirements of providing an alternative avenue of protest, meaningful time and a path of egress when issuing a dispersal order, and the like.

47.     Many MFF members have histories of engaging in the kinds of misconduct complained of herein, among other places, by CRB complaints, PSS investigations and in lawsuits.

48.     Examples of the RPD's unreasonable and discriminatory use of force at prior lawful protests include:

- In October 2009, an anti-war protest in Rochester resulted in several physical confrontations, with two protesters receiving stitches at the hospital after RPD officers pushed them face-first to the ground, and 12 protesters arrested for exercising their First Amendment rights. The peaceful march, held in the early evening, was interrupted by approximately forty RPD vehicles. Within three minutes of giving the order to disperse, RPD officers began to shove and hit protesters with clubs and deploy pepper spray. Protesters described RPD officers wading through the crowd to

pick out Black students to arrest. A press videographer who was filming one such arrest was wrestled to the ground by police and himself arrested.

- In May 2015, Katrina Perkins was protesting police brutality on a public street in a residential neighborhood, where two of her daughters and six of her grandchildren reside. Though Ms. Perkins was peacefully demonstrating, RPD officers violently seized and arrested her and then charged her with disorderly conduct and disruption. Those charges were dismissed two months later. Police brutality is a deeply personal issue to Ms. Perkins, as her daughter Lashedica was the 13-year-old shot three times by former-Deputy Chief Simmons in 2005.

- In July 2016, in Rochester as across the nation, people took to the streets to uphold the sanctity of Black lives and call for an end to racist policing. In response, the RPD deployed, beat, shoved, and pepper sprayed protesters. As one described it: "I started to turn and they tackled me to the ground….They're beating citizens for no reason whatsoever. I wasn't doing anything. I was taking pictures." RPD officers, in keeping with their pattern and practice, particularly targeted Black protesters with unlawful force, including Black journalists: Carlet Cleare and Justin Carter of WHAM-TV were both handcuffed and detained, even though Ms. Cleare was wearing a WHAM-TV shirt and they identified themselves as members of the press. Over the course of one weekend, Rochester had more arrests at its BLM protest (74) than the rest of the nation combined.

49. Despite the wealth of evidence of RPD members' historical brutality against protesters, Defendant City has ignored, and/or failed to utilize, relevant information, including

information gleaned from reports and lawsuits, as well as other data points, to identify

deficiencies in RPD training as it relates to constitutionally compliant protest policing.

50.     In fact, following the 2016 protest, the RPD and Mayor Lovely Warren's office

stated the police handled themselves appropriately.

51.     When questioned by public officials, former RPD Chief La'Ron Singletary stated

that he did not review the RPD's actions at the 2016 protest in developing the RPD's strategy for

responding to protests in 2020.

52.     In summary, upon information and belief, the RPD's exclusive focus on deterring,

dispersing, and demoralizing in trainings related to policing protests, coupled with the failure to

train on specific, relevant aspects of constitutional policing of protests, let alone how to

encourage or facilitate protests—despite having received clear notice that RPD policing of

protests has caused the systemic violations of protesters' constitutional rights for years—

demonstrates the City's negligence in failing to train and supervise RPD Officers in properly and

lawfully policing protests to ensure that protesters' rights under the First Amendment, Fourth

Amendment, Fourteenth Amendment, and other, related rights are not violated. As a result of the

City's negligence, Plaintiff NICOLE HUSHLA was injured and harmed, as described herein.

53.     Similarly, prior to 2020, BAXTER had received clear notice that peaceful

demonstrations have occurred and will continue to occur in Monroe County, and that without

proper training, his Deputy Sheriffs would violate individuals' constitutional rights and endanger

the life and safety of protesters, such as Plaintiff NICOLE HUSHLA.

54.     Nevertheless, BAXTER, upon information and belief, took no steps to train his

Sheriff's Deputies on lawfully policing protests and other First Amendment activities.

55.     Instead, BAXTER, pursuant to County policy, trains his Sheriff's Deputies that a "civil disturbance" is defined as both "peaceful demonstrations or acts of violence." Thus, BAXTER, pursuant to County policy, explicitly conflates peaceful protests with violent riots.

56.     Upon information and belief, BAXTER does not provide any training to Sheriff's Deputies on drawing a meaningful distinction between "peaceful demonstrations" and "violent mobs". For example, in its "Hazard Mitigation Plan," the County states that, "Many civil unrest incidents are spontaneous and can occur at any time, rendering prediction of probability of future occurrences difficult. When these incidents occur, they can become extremely disruptive and difficult to control. Assumedly, civil unrest incidents including marches, protests, demonstrations, and gatherings will continue to occur throughout Monroe County."

57.     According to County policy, peaceful demonstrates are discouraged because of the perceived negative impacts on property resources, real estate and the economy; again, this is a result of BAXTER falsely conflating "peaceful demonstrations" with "acts of violence."

58.     Upon information and belief, BAXTER does not provide any training to Sheriff's Deputies on how to encourage and support individuals engaging in "peaceful demonstrations" to ensure that their constitutional rights are not inhibited by law enforcement.

59.     Upon information and belief, BAXTER does not provide any training to Sheriff's Deputies on making a meaningful distinction between how Sheriff's Deputies are trained and instructed on policing "peaceful demonstrations" versus "violent mobs".

60.     Instead, County policy states that, "[m]any protests intended to be peaceful demonstrations to the public and the government can escalate into general chaos." Thus, upon information and belief, BAXTER trains his Sheriff's Deputies to police peaceful demonstrations in the same manner as they would a violent mob.

NYSCEF DOC. NO. 1                                  RECEIVED NYSCEF: 08/23/2021

61.     Like the RPD, upon information and belief, BAXTER trains Sheriff's Deputies exclusively on deterring, dispersing, and demoralizing protests and peaceful demonstrations.

62.     In June 2020, several Monroe County Legislators called on BAXTER to implement new protest training to ensure the safety of protesters at Black Lives Matter demonstrations. The legislators drafted a letter to County Executive Adam Bello and BAXTER in which they made a number of requests related to public safety and the safety of protesters, and closed by stating, "*Once again, we believe the safety of both protesters, motorists, and law enforcement is of the utmost importance. Right here in Monroe County and across the Nation, we have seen the negative results when leaders are reactionary rather than proactive. Please be sure that a plan is in place to ensure the mutual safety of all involved.*"

63.     BAXTER claimed the letter was a "political stunt" and refused to provide any specific details regarding how Sheriff's Deputies would ensure the safety of Black Lives Matter protesters during peaceful demonstrations.

64.     As a result of the BAXTER's negligence, Plaintiff NICOLE HUSHLA was injured and harmed, as described herein.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Excessive Force**
*Pursuant to 42 U.S.C. § 1983*

65.     All preceding and subsequent paragraphs are incorporated by reference.

66.     Defendants' actions towards Plaintiff constitutes excessive force in violation of 4th Amendment of the United States Constitution and 42 U.S.C. § 1983.

67.     Defendants used force against Ms. HUSHLA that was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted them

INDEX NO. E2021007848
FILED: MONROE COUNTY CLERK 08/23/2021 Page 89 of 127
NYSCEF DOC. NO. 14

68.     It was objectively unreasonable for the John Doe RPD Officers and/or Richard Roe Sheriffs Deputies to shoot Ms. HUSHLA in the face with a tear gas cannister.

69.     The types and levels of force Defendants used against Ms. HUSHLA were in contravention of, or inconsistent with, related RPD policies and/or training.

70.     As a result of the acts and omissions of the RPD officers and/or Sheriff's Deputies, Defendants deprived Ms. HUSHLA of her federal, state, and/or other legal rights; caused Ms. HUSHLA bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Ms. HUSHLA to expend costs and expenses; and/or otherwise damaged and injured Ms. HUSHLA.

71.     Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

72.     The actions of the RPD officers and Sheriff's Deputies were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### SECOND CLAIM FOR RELIEF
**Assault and Battery**
*Pursuant to New York State Law*

73.     All preceding and subsequent paragraphs are incorporated by reference.

74.     RPD officers and/or Sheriff's Deputies battered Ms. HUSHLA by subjecting her to various chemical weapons

75.     RPD officers and/or Sheriff's Deputies shot Ms. HUSHLA in the face with a tear gas cannister.

76.     Ms. HUSHLA was not threatening the law enforcement officers or any other person at any time.

77.    By the aforedescribed conduct, defendants, their agents, servants and employees, acting within the scope of their employment, intentionally, willfully and maliciously battered Plaintiff Ms. HUSHLA, when they, in a hostile and/or offensive manner struck Plaintiff without her consent and with the intention of causing harmful and/or offensive bodily contact to the Plaintiff and caused such battery.

78.    The RPD Officers were at all times agents, servants, and employees acting within the scope of their employment by the Defendant CITY and the RPD, which are therefore responsible for their conduct.

79.    The Defendant CITY, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

80.    At no point during the incidents described herein did the circumstances necessitate or support the above applications of force utilized by the defendant RPD officers and/or Sheriff's Deputies against Plaintiff.

81.    Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

82.    The actions of the RPD officers and Sheriff's Deputies were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

**THIRD CLAIM FOR RELIEF**
**First Amendment Infringements, Including First Amendment Retaliation**
***Pursuant to 42 U.S.C. § 1983***

83.    All preceding and subsequent paragraphs are incorporated by reference.

84.    In committing the acts and omissions complained of herein, Defendants acted under color of state law—individually, in concert, and through a conspiracy—to deprive Plaintiff of the rights protected by the First Amendment to the United States Constitution.

FILED: MONROE COUNTY CLERK 01/18/2022 02:36 PM          INDEX NO. E2021007848
NYSCEF DOC. NO. 14                                      RECEIVED NYSCEF: 01/18/2022
NYSCEF DOC. NO. 1                                       RECEIVED NYSCEF: 08/23/2021

Page 91 of 127

85.     Defendants (a) retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment, and (b) imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in falsely arresting Plaintiff, in subjecting Plaintiff to excessive force, in selectively enforcing laws and regulations against Plaintiff, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

86.     Defendants engaged in those and other acts and omissions complained of herein in retaliation for Plaintiff's perceived protected speech and/or conduct.

87.     Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

88.     Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

89.     As a result of the foregoing, Plaintiff suffered injuries and damages.

90.     The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### FOURTH CLAIM FOR RELIEF
#### Failure To Intervene
##### *Pursuant to 42 U.S.C. § 1983*

91.     All preceding and subsequent paragraphs are incorporated by reference.

92.     The individual defendants all had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights by the other Defendant RPD officers and/or Sheriff's Deputies.

INDEX NO. E2021007848
Case 6:20-cv-06690-FPG Document 69-3 Filed 01/28/22 Page 92 of 127
RECEIVED NYSCEF: 01/18/2022
RECEIVED NYSCEF: 08/23/2021

93.     The individual defendants failed to intervene on Plaintiff's behalf despite having had realistic opportunities to do so.

94.     The individual defendants failed to intervene on Plaintiff's behalf despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

95.     As a result of the aforementioned conduct of the individual defendants, Plaintiff's constitutional rights were violated.

96.     As a result, Plaintiff was damaged, injured and harmed, and seeks compensation in an amount to be determined at trial.

97.     Defendant RPD officers and/or Sheriff's Deputies' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### FIFTH CLAIM FOR RELIEF
### Negligence
### (Against BAXTER)

98.     All preceding and subsequent paragraphs are incorporated by reference.

99.     Defendant BAXTER was negligent in the training, supervision and discipline of the Defendant Sheriff's Deputies, who were provided, upon information and belief, no training for policing protests, engaging in peaceful crowd control, or how to properly and safely use the "less lethal" weapons; or the training they were provided was inadequate.

100.    BAXTER had a duty to ensure that his Sheriff's Deputies were properly trained in policing peaceful protests and other large demonstrations, to keep the participants safe promote First Amendment expression.

FILED: MONROE COUNTY CLERK 06/28/2021 07:50 AM
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 08/23/2021

101.     BAXTER knew or should have known that County policy conflated peaceful demonstrations with violent mobs, and that in the absence of proper training, his Sheriff's Deputies would use unreasonable and excessive force against peaceful demonstrators.

102.     BAXTER knew or should have known that exposure to chemical weapons such as pepper balls, tear gas and OC spray can cause serious adverse health effects, including menstrual irregularities.

103.     BAXTER breached his duty to keep demonstrators safe by, among other things, training his Sheriff's Deputies to police peaceful demonstrations in the same manner as they would police violent mobs.

104.     BAXTER breached his duty to keep demonstrators safe by, among other things, training his Sheriff's Deputies to use chemical weapons indiscriminately against protesters.

105.     Ms. Hushla's injuries were a direct and proximate result BAXTER negligently training his deputies in how to lawfully police First Amendment activities.

106.     Moreover, despite their use of extreme and excessive violence against protesters on September 2-4, 2020, BAXTER was negligent failing to supervise or discipline any of his Sheriff's Deputies related to any force used protesters on those nights prior to Plaintiff's injury. BAXTER's negligence was the direct and proximate cause of Plaintiff's injuries.

107.     Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

**SIXTH CLAIM FOR RELIEF**
**Negligence**
**(Against the CITY)**

Page 94 of 127

108.    All preceding and subsequent paragraphs are incorporated by reference.

109.    Defendant CITY was negligent in the training, supervision and discipline of the Defendant RPD officers, who were provided, upon information and belief, no training for policing protests, engaging in peaceful crowd control, or how to properly and safely use the "less lethal" weapons; or the training they were provided was inadequate.

110.    The CITY had a duty to ensure that RPD officers were properly trained in policing peaceful protests and other large demonstrations, to keep the participants safe promote First Amendment expression.

111.    The CITY knew or should have known that its training was inadequate; that in the past, numerous RPD officers had seriously injured peaceful demonstrators; and that in the absence of proper training, his RPD officers would use unreasonable and excessive force against peaceful demonstrators.

112.    The CITY knew or should have known that exposure to chemical weapons such as pepper balls, tear gas and OC spray can cause serious adverse health effects, including menstrual irregularities.

113.    The CITY breached his duty to keep demonstrators safe by, among other things, training RPD officers to police peaceful demonstrations in the same manner as they would police violent mobs.

114.    The CITY breached its duty to keep demonstrators safe by, among other things, training RPD officers to use chemical weapons indiscriminately against protesters.

115.     Ms. Hushla's injuries were a direct and proximate result of the CITY negligently training RPD officers in how to lawfully police First Amendment activities.

116.     Moreover, despite their use of extreme and excessive violence against protesters on September 2-4, 2020, the CITY was negligent failing to supervise or discipline any of RPD officers related to any force used protesters on those nights prior to Plaintiff's injury. The CITY's negligence was the direct and proximate cause of Plaintiff's injuries.

117.     Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

### SEVENTH CLAIM FOR RELIEF
### Negligence
### (Against the Individual Defendants)

118.     All preceding and subsequent paragraphs are incorporated by reference.

119.     The Defendant RPD officers and Sheriff's Deputies, their agents, servants, employees, officers and deputies were negligent using the "less lethal" military grade weapons and chemical weapons against Plaintiff, which was the direct and proximate cause of Plaintiff's injuries.

120.     The Defendant RPD officers and Sheriff's Deputies had a duty to permit the protesters to engage in First Amendment Activities and to protect them from harm or physical violence.

121.     The Defendant RPD officers and Sheriff's Deputies had a duty to not use force against any individual protester in the absence of individualized cause or legal justification for the use of force.

FILED: MONROE COUNTY CLERK 01/18/2022 02:36 PM

INDEX NO. E2021007848

NYSCEF DOC. NO. 14

RECEIVED NYSCEF: 01/18/2022
NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 08/23/2021

122.     The Defendant RPD officers and Sheriff's Deputies breached that duty by firing "less lethal" munitions and chemical weapons into "groups" of protesters based on perceived "group conduct," without making any individualized determination that they were legally justified to use force against any individual in the perceived "group."

123.     The breach of that duty by the Defendant RPD officers and Sheriff's Deputies was the direct and proximately cause of Ms. HUSHLA's serious injuries described herein.

124.     Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

125.     Defendant RPD officers and/or Sheriff's Deputies' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## EIGHTH CLAIM FOR RELIEF
### Respondeat Superior
### (Against the City)

126.     All preceding and subsequent paragraphs are incorporated by reference.

127.     The RPD officers, and other individuals who joined with them in their wrongful conduct, were, at all times relevant to this Count, were employees and agents of the Defendant CITY. Each of those defendants and persons was acting within the scope of his or her employment, and their acts and omissions, as alleged above, are therefore directly chargeable to the CITY under the doctrine of *respondeat superior.*

128.     Ms. HUSHLA sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

FILED: MONROE COUNTY CLERK 01/18/2022 02:36 PM
INDEX NO. E2021007848

NYSCEF DOC. NO. 14

RECEIVED NYSCEF: 01/18/2022

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 08/23/2021

Page 97 of 127

**WHEREFORE** and in light of the foregoing, Plaintiff demands judgment on all claims for relief:

a.   Empanel a jury;

b.   Award compensatory and punitive damages;

c.   The Plaintiff demands the foregoing relief jointly and severally against all of the defendants in an amount in excess of the jurisdiction of all lower Courts, except that the punitive damages demands are, as a matter of law, not recoverable against a municipality and therefore are not made against the City;

d.   Award Plaintiff reasonable attorney's fees and costs, and interest pursuant to 42 U.S.C. § 1988; and

e.   Such other and further relief as the court may deem just and proper.

Dated: New York, New York          Respectfully Submitted,
August 23, 2021

ROTH & ROTH, LLP.
EASTON THOMPSON KASPEREK SHIFFRIN LLP

Elliot Dolby Shields
Co-counsel for Plaintiffs
192 Lexington Avenue, Suite 802
New York, New York 10024
(212) 425-1020

Donald Thompson
Co-counsel for Plaintiffs
16 West Main Street, Suite 243
Rochester, New York 14614
Ph: (585) 423-8290

## ATTORNEY'S VERIFICATION

**ELLIOT DOLBY SHIELDS,** an attorney duly admitted to practice before the Courts of

the State of New York, affirms the following to be true under the penalties of perjury:

I am associated with Roth & Roth, LLP, attorneys for the Plaintiff, I have read the annexed

**VERIFIED COMPLAINT** and know the contents thereof, based on the files maintained in my

office, and the same are true to my knowledge, except those matters therein which are stated to be

alleged upon information and belief, and as to those matters I believe them to be true. My belief, as

to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent

information contained in my files. This verification is being made by me and not my client because

I maintain my office in a different county than where my client resides.


DATED: New York, New York
      August 23, 2021

_____
ELLIOT DOLBY SHIELDS

EXHIBIT P

<u>**LOCAL EMERGENCY ORDER**</u>
**PURSUANT TO EXECUTIVE LAW – SECTION 24**

**WHEREAS**, on January 30, 2020, the World Health Organization designated the novel coronavirus, COVID-19, outbreak as a public health emergency of international concern;

**WHEREAS**, on January 31, 2020, United States Health and Human Services Secretary, Alex M. Azar II, declared a public health emergency for the entire United States to aid the nation's healthcare community in responding to COVID-19;

**WHEREAS**, on March 7, 2020, the Governor of the State of New York, Andrew M. Cuomo, issued an Executive Order No. 202, declaring a Disaster Emergency in the State of New York, and by Executive Order 202.60, dated September 4, 2020, continued the declaration of State Disaster Emergency;

**WHEREAS**, on March 12, 2020, and following, the Governor issued Executive Order Numbers 202.1 through 202.96, Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency;

**WHEREAS**, on March 16, April 15, May 15, June 16, July 15, August 13, September 12, October 12, November 11, December 11, 2020, and January 11 and February 10, 2021, I, Lovely A. Warren, Mayor of the City of Rochester, New York, issued proclamations of Local State of Emergency due to concern regarding the transmission of COVID-19 within the City and the effects of the COVID-19 pandemic on the people of the City of Rochester;

**WHEREAS**, throughout the summer and into the fall of 2020, groups of individuals in the City of Rochester are gathering both indoors and outdoors in public places, without face masks and without social distancing as required by the Governor's Executive Orders, in particular during the late-night and early morning hours, and that some such gatherings have resulted in physical fighting and gun violence, increasing the risk of transmission and community spread of the virus;

**WHEREAS**, Executive Law § 24(1)(e) expressly provides that, notwithstanding any inconsistent provision of law, general or special, a local chief executive of a city may prohibit and control the presence of persons on public streets and places;

**NOW, THEREFORE**, effective 12:01 a.m. on March 8, 2021, pursuant to the powers granted to me by New York State Executive Law Section 24, and in order to adequately protect life and property and to bring the emergency situation under control, it is hereby

**ORDERED** that City of Rochester facilities shall have limited public access as listed at: https://www.cityofrochester.gov/coronavirus/; and it is further

**ORDERED** that any meeting of any City body or board that is subject to the New York State Open Meetings Law as codified at Article 7 of the Public Officers Law may be conducted virtually through the use of audio-visual technologies and shall not require the in-person attendance of members of the public so long as the public has the ability to view or listen to such proceeding and that such meetings are recorded and later transcribed; and it is further

**ORDERED** that meetings of the City Planning Commission, the Rochester Preservation Board and the Zoning Board of Appeals, including all meeting, action and default deadlines provided in Chapters 120 and 128 of the City Code,[1] shall be postponed until the dates set forth below:

- For the Rochester Preservation Board: April 7, 2021
- For the City Planning Commission: March 8, 2021
- For the Zoning Board of Appeals: March 18, 2021

and that any rules or procedures of these boards providing for in-person oral testimony at any such meeting are hereby suspended and the time for mailing and filing of decisions of these boards is extended from ten to fifteen business days; and it is further

**ORDERED** that provisions of Sections 120-77.1, 81.B, 105,149A and 177J, and 140-57 and other pertinent provisions of the City Zoning Code be suspended for the period of this Order in order to accommodate implementation of the Governor's Executive Order 202.38 permitting outdoor dining at City restaurants; and it is further

**ORDERED** that, to further accommodate outdoor dining at City restaurants, the prohibition on excessive noise set forth in Rochester City Code § 75-4 shall be suspended to the extent necessary to exempt from said prohibition, during the hours of 8:00 a.m. to 11:00 p.m., noise emanating from restaurants engaged in outdoor dining.  All other provisions of Chapter 75 of the Rochester City Code shall continue to apply to restaurants with outdoor dining, including those provisions regulating sound reproduction devices; and it is further

**ORDERED** that, between the hours of 11:00 p.m. and 5:00 a.m., it shall be unlawful to gather in groups of more than ten people indoors or outdoors in the City of Rochester for any non-essential purpose unless such a gathering is within premises licensed under the Alcoholic Beverage Control Law and operated in compliance with the regulations and rules promulgated by the State Liquor Authority; and it is further;

---

[1] See Rochester City Code Sections 120-184, 120-185, 120-186, 120-188, 120-189, 120-190, 120-191, 120-192, 120-193, 120-194, 120-195, and 128-5.

**ORDERED** that Rochester City Code § 47B-1 is suspended to the extent necessary to allow for statements of domestic partnership to be executed remotely, utilizing audio-video technology, and the Rochester City Clerk is directed to establish and publish conditions and procedures to implement this Ordering clause; and it is further

**ORDERED** that the City of Rochester Parking Violations Bureau and Municipal Code Violations Bureau shall be authorized to conduct hearings remotely, utilizing audio-video technology, so long as the person charged with the violation(s) to be adjudicated consents to holding the hearing by remote means.  The Director of the City's Bureau of Parking is directed to establish procedures necessary to undertake remote hearings that are consistent with NYS Vehicle and Traffic Law Article 2-B, Rochester City Charter Section 6-6, and Rochester City Code Chapter 13A; and it is further

**ORDERED** that City of Rochester Director of Finance shall be authorized to conduct remotely, utilizing audio-video technology, any hearings requested or noticed pursuant to Rochester City Charter § 6-140(F); and it is further

**ORDERED** that a secure drop box will continue to be maintained at the City Hall Fitzhugh Street entrance for the payment of all City of Rochester tax and other payments; and it is further

**ORDERED** that all service of process and service of notices of claim shall be made exclusively by certified mail to Corporation Counsel, City of Rochester, 30 Church Street, Rm. 400A, Rochester, New York, 14614; and it is further

**ORDERED** that Rochester City Charter Sections 3-4 and 6-19, and City of Rochester Ordinance No. 2012-318, are suspended to the extent necessary to allow the Mayor to enter into any contract for services that aid or assist the City in addressing the COVID-19 Emergency, or to extend any existing contract for such services; and it is further

**ORDERED** that fees for any license issued pursuant to Rochester City Code Sections 29-2 and 29-5; 29-7 and 29-11; 29-13 and 29-16; 37-1 and 37-3; or 98-4 and 98-11, shall be waived for the period of February 1, 2021 to January 31, 2022.

This **Emergency Order** shall be published in the local paper and publicized by an announcement over not less than two radio or television stations within normal operating range of the City and shall remain in force and effect until an announcement that it has been rescinded or expires pursuant to Executive Law Section 24, whichever occurs first.

Dated: March 8, 2021
Time: 3:00 p.m.

Lovely A. Warren
Mayor, City of Rochester

Instructions:

1) Complete or adapt checklist form as necessary.
2) Per Exec Law § 24: The Proclamation must be executed in **quadruplicate** and sent within 72 hours, or as soon thereafter as practical, to:
   a. The City Clerk
   b. The Monroe County Clerk: 101 County Office Bldg, 39 W Main St, Rochester NY, 14614, mcclerk@monroecounty.gov
   c. New York Secretary of State: One Commerce Plaza, 99 Washington Ave, Albany, NY 12231-0001
   d. New York State Watch Center, Office of Emergency Management, Division of Homeland Security and Emergency Services: 1220 Washington Ave, Building 22, Albany, NY 12226
3) Per Exec Law § 24: Notice of the Proclamation and Emergency Orders must be sent to:
   a. The Democrat & Chronicle:
      a.i. Scott Norris (snorris@democratandchronicle.com)
      a.ii. Brian Sharp (bdsharp@democratandchronicle.com)
   b. Local television and radio stations:
      b.i. news10@whec.com
      b.ii. news1@whec.com
      b.iii. newsroom@rochesterhomepage.net
      b.iv. news@rochesterhomepage.net
      b.v. pattisinger@minorityreporter.net
      b.vi. rbj@rbj.net
      b.vii. assignment@charter.com
      b.viii. TheChallengerNews@gmail.com
      b.ix. rochester@twcnews.com
      b.x. wdkx@wdkx.com
      b.xi. news@13wham.com
      b.xii. whamnews@iheartmedia.com
      b.xiii. newsroom@wroctv.com
      b.xiv. newsroom@wxxi.org
      b.xv. southwesttribunenewspaper@gmail.com
4) Send copies of the Proclamation to:
   a. Monroe County Executive: Adam Bello: 110 County Office Building, 39 W Main St, Rochester NY, 14614
   **b.** Monroe County Health Department: Michael Mendoza, 111 Westfall Road, Room 952, Rochester, NY 14620, mchealth@monroecounty.gov
**5)** **NOTE:** This Proclamation will expire within 30 days, unless renewed for additional 30-day increments, pursuant to Executive Law Section 24(1).
6) **NOTE:** The Emergency Orders will expire within 5 days, unless renewed for additional 5-increments, pursuant to Executive Law Section 24(2).

EXHIBIT Q

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

           v.

                           21-CR-6100-CJS

RYAN HOWE a/k/a Rylea Autumn,

           Defendant.

_____

### PLEA AGREEMENT

The defendant, RYAN HOWE, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and plead guilty to a one-count Information which charges a violation of Title 18, United States Code, Section 231(a)(3) (civil disorder), for which the maximum possible sentence is a term of imprisonment of 5 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of 3 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms and conditions of the defendant's term of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence,

in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3.      The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

First, that a civil disorder existed at the time of the violation;

Second, that such civil disorder obstructed, delayed, or adversely affected, in any way or degree, commerce or the movement of any article or commodity in commerce;

Third, that the one or more law enforcement officers were lawfully engaged in the lawful performance of their official duties incident to and during the commission of such civil disorder;

Fourth, that the defendant attempted to commit an act for the intended purpose of obstructing, impeding, or interfering, either by himself or with someone else, with such law enforcement officer or officers; and

Fifth, that such attempt to act was done willfully and knowingly.

A "civil disorder" is defined as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

Case 21-cv-06069-FPG-JSD Document 16 Filed 00/23/21 Page 108 of 127

# FACTUAL BASIS

4.    The defendant and the government agree to the following facts which form the

basis for the defendant's guilty plea including relevant conduct:

a.    On or about September 24, 2020, in the City of Rochester, in the
Western District of New York, the defendant, RYAN HOWE a/k/a
Rylea Autumn, together with others, attempted to commit acts to
obstruct, impede and interfere with any law enforcement officer lawfully
engaged in the lawful performance of his official duties incident to and
during the commission of a civil disorder which in any way and degree
obstructed, delayed and adversely affected commerce and the
movement of any article and commodity in commerce.

b.    During the month of September 2020, there were periods of civil unrest
in the City of Rochester in response to incidents involving the deaths of
George Floyd and Daniel Prude after encounters with law enforcement
officers. There were nights of violent protests that resulted in property
damage and looting, and injury to Rochester Police Department (RPD)
officers. On September 4, 2020, a group of protesters damaged property
and turned over tables at two restaurants, causing numerous patrons to
leave. On September 5, 2020, a group of approximately 1,500 protesters
blocked an intersection in the City of Rochester for hours, during which
time some of the protesters hurled rocks, bottles, lit fireworks, and other
objects at police officers, and pointed lasers at police officers, while the
police officers were manning metal barricades and engaging in crowd
control at the intersection. In addition, one protester struck a police
officer in the head with a wooden shield. In connection with the protests
on September 5, 2020, law enforcement shut down Exit 14 on Interstate
490 in the City of Rochester for approximately eight hours and the State
Street exit on the Inner Loop in the City of Rochester for approximately
an hour. On the evening of September 8, 2020, a group of approximately
400 protesters again blocked an intersection in the City of Rochester,
and at least one member of the group pointed lasers in the eyes of several
police officers who were positioned in the area of the Public Safety
Building (PSB). The defendant was not physically present during the
protests in Rochester between September 4, 2020, and September 24,
2020, but the defendant was aware of them.

c.    On September 23, 2020, the Kentucky Attorney General announced
that a grand jury had declined to indict police officers in relation to the
death of Breonna Taylor. In the wake of the Kentucky Attorney
General's announcement, several members of the public – including
individuals and groups in Rochester – expressed their disagreement with
the decision not to charge the officers and declared their intention to

protest in the evening on September 24, 2020. Through social media, several of these individuals expressed, in sum and substance, a desire to burn down the City of Rochester. A group of approximately 250 people protested in the streets of Rochester in the evening on September 24, 2020. RPD officers were present at the protest for the purposes of, among other things, ensuring the safety of protesters and the public, and protecting property from damage.

d.     The defendant admits and agrees that the actions of the protesters during the month of September 2020 (including September 24, 2020), constituted a civil disorder within the meaning of 18 U.S.C. § 232(1), and that such civil disorder obstructed, delayed, and adversely affected commerce within the meaning of 18 U.S.C. § 232(2).

e.     On September 23, 2020, the defendant posted a Facebook message, which included a link to an article about the grand jury's decision not to indict certain officers in the Breonna Taylor case and the statement, "Burn this shit to the fucking ground." The next day, on September 24, 2020, the defendant posted a Facebook message, which read, "Good morning to everyone ready to burn this whole fuckin country to the ground!"

f.     On September 24, 2020, at approximately 8:32 a.m., the defendant posted a message on the defendant's Facebook account that consisted of a recipe for a Molotov cocktail and guidance on how to use one against law enforcement officers. Specifically, the Facebook post read as follows:

       1 part gasoline
       1 part used motor oil
       1 part crushed Styrofoam
       Mix until the consistency of a thick paste
       Place in glass containers
       Soak rag in gasoline, tie a knot in the end just big enough to fit through the hole of the bottle, but won't rip out.
       Light wick
       Aim at cop
       Throw

h.     At the time of the Facebook post in ¶ 4(f), law enforcement officers from RPD and other agencies were involved in responding to the civil unrest that was occurring in Rochester. Those law enforcement officers were lawfully engaged in the lawful performance of their official duties, that is, they were engaged in, among other things, protecting protesters and members of the public from physical harm, and property from damage and looting. In making the Facebook post, the defendant intended to

4

induce and cause others to obstruct, impede and interfere with law enforcement officers' efforts to perform those official duties by making and throwing Molotov cocktails at such officers.

## III. SENTENCING GUIDELINES

5.      The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6.      The government and the defendant agree that Guidelines § 2A2.4(a) applies to the offense of conviction and provides for a base offense level of 10.

### ACCEPTANCE OF RESPONSIBILITY

7.      At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility), which would result in a total offense level of 8.

### CRIMINAL HISTORY CATEGORY

8.      It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

9.     It is the understanding of the government and the defendant that with a total offense level of 8 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **0 to 6 months, a fine of $2,000 to $20,000, and a period of supervised release of 1 to 3 years**. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

10.     The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

11.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

12.     In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV. STATUTE OF LIMITATIONS

13.     In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this

agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or the vacating of the conviction becomes final.

## V. REMOVAL

14.    The defendant represents that the defendant is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI. GOVERNMENT RIGHTS AND RESERVATIONS

15.    The defendant understands that the government has reserved the right to:

a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.    advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment;

d.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

7

    e.     oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

16.    At sentencing, the government will move to dismiss the complaint currently pending against the defendant under Magistrate No. 20-MJ-4198.

17.    The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII. APPEAL RIGHTS

18.    The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 9 above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that the statute to which the defendant is pleading guilty (18 U.S.C. § 231(a)(3)) is unconstitutional and that the admitted conduct does not fall within the scope of the statute.

19.    The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

8

20.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 9 above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VIII. <u>TOTAL AGREEMENT AND AFFIRMATIONS</u>

21.     This plea agreement represents the total agreement between the defendant, RYAN HOWE a/k/a Rylea Autumn, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York

By:    _____
BRETT A. HARVEY
Assistant U.S. Attorney

Dated:  June 24, 2021

I have read this agreement, which consists of pages 1 through 10. I have had a full opportunity to discuss this agreement with my attorney, Steven G. Slawinski, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

RYAN HOWE
Defendant

STEVEN G. SLAWINSKI, ESQ.
Attorney for the Defendant

Dated: June 24, 2021

Dated: June 24, 2021

# EXHIBIT R

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONRE**

NICOLE HUSHLA,

                            Plaintiff                    **MEMORANDUM OF LAW**


                                                         **Index No.: E2021007848**


            -against-


THE CITY OF ROCHESTER,  et al.


                            Defendants


### PRELIMINARY STATEMENT

The Complaint concedes that during the relevant period Plaintiff was protesting in defiance on an Emergency Order held constitutional by the Western District of New York[1]. (See Exhibit B, Emergency Order). Moreover, she participated in protests wherein multiple individuals were carrying shields and wearing helmets—clearly signaling their intent to confront and defy police.  Additionally, several other individuals were launching bottles and fireworks at police, injuring officers[2]. In fact, some of the protestors pled guilty to civil disorder and stipulated that the protests during the relevant period were violent and replete with criminal conduct. (Exhibit C, Howe Plea Agreement, pg. 3).  The Plea Agreement for one of Plaintiff's fellow protestors, and a Plaintiff in a related protest suit against the City of Rochester, stipulated as follows in the above-referenced Plea Agreement:

---

[1] Martin v. Lovely Warren 6:20-cv-06538-CJS Document 12 Filed 08/26/20.

[2] https://www.democratandchronicle.com/story/news/2020/09/08/rochester-ny-protest-daniel-prude-death-blm-september-8/5743262002/

https://13wham.com/news/local/rpd-two-men-threw-glass-bottles-at-officers-during-protest

Case 6:22-cv-06039-FPG    Document 1-2    Filed 01/25/22    Page 118 of 127

b.   During the month of September 2020, there were periods of civil unrest in the City of Rochester in response to incidents involving the deaths of George Floyd and Daniel Prude after encounters with law enforcement officers. There were nights of violent protests that resulted in property damage and looting, and injury to Rochester Police Department (RPD) officers. On September 4, 2020, a group of protesters damaged property and turned over tables at two restaurants, causing numerous patrons to leave. On September 5, 2020, a group of approximately 1,500 protesters blocked an intersection in the City of Rochester for hours, during which time some of the protesters hurled rocks, bottles, lit fireworks, and other objects at police officers, and pointed lasers at police officers, while the police officers were manning metal barricades and engaging in crowd control at the intersection. In addition, one protester struck a police officer in the head with a wooden shield. In connection with the protests on September 5, 2020, law enforcement shut down Exit 14 on Interstate 490 in the City of Rochester for approximately eight hours and the State Street exit on the Inner Loop in the City of Rochester for approximately an hour. On the evening of September 8, 2020, a group of approximately 400 protesters again blocked an intersection in the City of Rochester, and at least one member of the group pointed lasers in the eyes of several police officers who were positioned in the area of the Public Safety Building (PSB). The defendant was not physically present during the protests in Rochester between September 4, 2020, and September 24, 2020, but the defendant was aware of them.

The entirety of the Complaint is a cherry-picked version of well established, local history. Plaintiff has failed to articulate facts that plausibly show the police response to the protests were motivated by anything other than large, unlawful gatherings of people, armed with shields, wearing helmets, some launching fireworks and bottles at police. These gatherings were not only illegal per the referenced Emergency Order, but were marked by unlawful activity such as blocking roadways, bridges, sidewalks and damaging private and public property.

## MOTION TO DISMISS STANDARD

"In deciding whether to grant a motion to dismiss for failure to state a claim, the court must accept the factual allegations contained in the Complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Foster v. Humane Soc'y of Rochester & Monroe County, Inc.*, 724 F. Supp. 2d 382, 388 (W.D.N.Y. 2010) (Larimer, J.). "At the same time, however, 'a plaintiff's obligation … requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.'" *Foster*, 724 F. Supp. 2d at 382 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). "Thus, where a plaintiff 'has not nudged his claims across the line from conceivable to plausible, his Amended Complaint must be dismissed.'" *Id.* at 388 (quoting *Twombly*, 550 U.S. at 570). "A 'plausible' entitlement to relief exists when the allegations in the Amended Complaint move the plaintiff's claims across the line separating the 'conclusory' from the 'factual,' and the 'factually neutral' from the 'factually suggestive.'" *Id.* "Although plausibility is not a 'probability requirement,' [p]laintiffs must allege facts that permit 'more than a sheer possibility that a defendant has acted unlawfully.'" *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the Complaint, in documents appended to the Complaint or incorporated in the Complaint by reference, and to matters of which judicial notice may be taken." *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

## I. ALL NEGLIGENCE CLAIMS MUST BE DISMISSED.

Claims for negligent hiring, training, retention and supervision fail where the individual officers were acting within the scope of their employment and authority. *Watson v. Strack*, 5 A.D.3d 1067, 1068 (4th Dep't 2004). Because the officers were acting within the scope of their employment, and the City stipulates to that fact, this claim fails.

Additionally, other than conclusory and contradictory statements made in the "alternative", plaintiff has failed to set forth any factual allegations in support of allegations of negligent training. Plaintiff has pointed to a few factually, temporally and geographically distinct instances of alleged "protests" spanning a period of over a decade—none of which involved the kind of wanton destruction and looting associated with 2020 protests in this case. To support any alleged failure to train Plaintiff must plausibly allege: (1) a policymaker knows "to a moral certainty" that employees will confront a given situation; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation and (3) "the wrong

INDEX NO. E2021007848
RECEIVED NYSCEF: 01/18/2022

Case 6:22-cv-06039-FPG   Document 1-2   Filed 01/25/22   Page 120 of 127

choice will frequently cause the deprivation of citizens' constitutional rights." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (quoting *Walker v. New York*, 974 F.2d 293, 297 (2d Cir.1992)). *In re NY City Policing During Summer 2020 Demonstrations,* 2021 US Dist LEXIS 128437, at 34 [SDNY 2021].  The riotous "protests" that occurred throughout 2020 have no modern, historical precedence in the City of Rochester. Therefore, allegations that Defendants inadequately trained or prepared for the "protests" is without factual foundation or merit.

Moreover, the Complaint sets forth no facts regarding City disciplinary procedures. Specifically, Plaintiff fails to even allege whether a complaint was made to RPD concerning incidents alleged in the Complaint.  Moreover, the Complaint points to no factually similar protests by which allegedly widespread abuses were alleged against RPD Officers with no corrective/disciplinary action taken. Again, the 2020 protests in Rochester, NY have no historical precedent.

Additionally, Plaintiff cannot sue for the intentional torts of assault and battery, while also suing for negligence as these causes of action are mutually exclusive. *Mazzaferro v. Albany Motel Enterprises, Inc.,* 515 N.Y.S.2d 631, 632-33 (3rd Dep't, 1987).  As stated above, "[N]egligence claims cannot coexist with claims for intentional torts such as those asserted here, assault, battery, and intentional infliction of emotional distress."  *See United National Insurance Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993).

Furthermore, the Complaint sets forth no facts that plausibly illustrate Officers are either not trained or are inadequately trained in the context of protests, particularly violent protests as in the instant matter.  Furthermore, there are no facts asserted that plausibly identify a duty by Defendants to accommodate spontaneous, violent protests that violated City emergency orders in place during the height of the COVID pandemic[3].  The entirety of the negligence claim is premised on alleged police mishandling of "peaceful" protests.  However, the protests were at all times unlawful.  Plaintiff states throughout the Complaint that she violated no laws, ordinances or regulations.  However, that statement is indefensibly false. The Emergency Order prohibiting the type of large gatherings Plaintiff attended during the subject period was already litigated by

---

[3] https://www.wxxinews.org/local-news/2020-03-16/mayor-warren-declares-state-of-emergency-in-rochester

Plaintiff's counsel and found to be constitutionally sound. The Complaint stipulates that she not only attended protests but remained on the streets until 1:00am, well past the lawful curfew. Therefore, Plaintiff's very presence at the protest was a misdemeanor and police had no duty to make any accommodation for criminal acts.

Accordingly, the negligence claims against the City should be dismissed.

## II. PLAINTIFF CANNOT SUE FOR BOTH ACTIVE VIOLATIONS AND FAILURE TO INTERVENE.

Plaintiff's Ninth cause of action for failure to intervene must also be dismissed. Federal law recognizes that law enforcement officers have "an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v Branen*, 17 F3d 552, 557 [2d Cir 1994]. Failure to intervene is inapplicable, however, "[w]here the officer is a direct participant in the allegedly excessive use of force[.]" *Cuellar v Love*, 2014 US Dist LEXIS 51622 23, [SDNY Apr. 11, 2014, No. 11-CV-3632 (NSR)]; See also *Abujayyab v City of New York,* 2018 US Dist LEXIS 140914 *23-24 [SDNY Aug. 20, 2018, No. 15-CV-10080 (NRB)].

Plaintiff sues all City Defendants for both excessive force and failure to intervene, which is legally impermissible.  Accordingly, the Ninth Claim must be dismissed.

## III. PLAINTIFF HAS NOT MADE OUT A COGNIZABLE FIRST AMENDMENT CLAIM.

Throughout the relevant protest period (June – September 2020) the City of Rochester was under Emergency Orders which restricted gatherings. These orders were designed to limit the spread COVID and control rampant violence plaguing the city.  In *Martin v. Warren* these Orders were unsuccessfully challenged by the same nucleus of "protest plaintiffs" that have currently inundated the Courts with Complaints regarding their protest activities during period of the subject Emergency Orders. In upholding the legality of the Emergency Orders, which effectively prohibited the kinds of public gathering planned and executed by several current Plaintiffs, the Western District made the following findings of fact:

Case 6:22-cv-06039-FPG   Document 1-2   Filed 01/25/22   Page 122 of 127

1. RPD Officers informed protestors several times that they were violating the Emergency Order;

2. In light of the dangers of the spread of COVID and violence, incidental impacts on protests and speech were not unconstitutional[4].

Presently, the facts surrounding the current case are even more dire than those confronting the Western District in the *Martin v. Warren*. During the relevant period the City of Rochester was not only fighting the "twin evils" of COVID and gun violence, but had actually suffered rioting, looting and violence towards police officers related to the subject protests[5]. As stated above, at least one of the protestors has stipulated that the subject protests turned violent, resulting injuries to police and property damage. Individuals involved in the protests, some who played roles as organizers, and who are currently Plaintiffs in related lawsuits, have admitted to committing terroristic acts during the relevant period.

Plaintiff, who admits joining unlawful protests on September 5, 2020, and who admits blocking downtown intersections with other illegally assembled protestors, has provided no plausible evidence that the police response to protestors' unlawful activities was at all related to content or expression. "The First Amendment does not require that protestors be permitted to disrupt traffic, spook horses, and endanger public safety in order to convey their message. Courts have recognized a distinction between leafletting on public sidewalks and handing leaflets to the

---

[4] Martin v. Lovely Warren 6:20-cv-06538-CJS Document 12 Filed 08/26/20.

[5] https://spectrumlocalnews.com/nys/rochester/protests/2020/09/05/police--protesters-clash-during-another-night-of-demonstrations-in-rochester-following-death-of-daniel-prude-

https://www.democratandchronicle.com/story/news/2020/09/05/daniel-prude-protests-rochester-sees-third-night-unrest/5725389002/

https://www.democratandchronicle.com/story/news/2020/09/12/protests-rochester-ny-daniel-prude-11-straight-days-free-the-people-roc/5782445002/

https://www.justice.gov/usao-wdny/pr/2-defendants-plead-guilty-rioting-their-roles-arsons-during-may-2020-violent-protests

https://www.justice.gov/usao-wdny/pr/rochester-resident-who-posted-molotov-cocktail-recipe-social-media-during-protests

https://13wham.com/news/local/3rd-suspect-accused-of-setting-police-car-on-fire-arraigned-friday

occupants of moving vehicles; the latter may be prohibited due to valid safety concerns posed by handing literature to persons on public roadways (*see e.g. Contributor v City of Brentwood, Tenn.*, 726 F3d 861, 864 [6th Cir 2013] [upholding portion of city ordinance that prohibited sale or distribution of literature to the occupant of any motor vehicle on a street in order to further "the goals of traffic safety and flow"]; *Gonzalez v City of New York*,  F Supp 3d, 2016 US Dist LEXIS 134474, 2016 WL 5477774 [SD NY, Sept. 29, 2016, 14 Civ 7721 (LGS)] [rejecting First Amendment challenge to arrest for disorderly conduct for obstructing traffic]; *Cosac Found., Inc. v City of Pembroke Pines*, 2013 US Dist LEXIS 135647, 2013 WL 5345817 [SD Fla, Sept. 21, 2013, No. 12062144-CV] [upholding ordinance prohibiting solicitation or canvassing on roadways as exercise of significant government interest in regulating traffic flow and preventing injury to pedestrians and motorists]. Defendants have ample alternative channels of communication open to them through protest and leafletting in the pick-up/drop-off zones and on the surrounding public sidewalks (see *Contributor*, 726 F3d at 865-866).  As the United States Supreme Court has recognized, *"*When clear and present danger of . . . interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order appears, the power of the state to prevent or punish is obvious." (*Cantwell v Connecticut*, 310 US 296, 308, 60 S Ct 900, 84 L Ed 1213 [1940]). The government has a strong interest in ensuring the public safety and order, in promoting the free flow of traffic on public streets and sidewalks, and in protecting the property rights of all its citizens" (*Madsen*, 512 US at 768).   *Cent. Park Sightseeing LLC v New Yorkers for Clean, Livable & Safe Sts., Inc.,* 157 AD3d 28, 35 [1st Dept 2017].

Plaintiff was part of a crowd of protestors, some of whom committed criminal acts during the relevant period.  The generalized description of the subject protests as "peaceful" belies the historical reality of the period[6]. Protestors occupied City Hall, stormed the Public Safety Building where memorials were vandalized and vehicles were set alight, and blocked traffic on roadways, bridges and intersections.  These facts are well documented and publicized.  While the protestors may find merit in their cause, their methods were neither lawful nor privileged.  Finally, per the Emergency Order upheld by the Western District, the mass protests in which Plaintiff was a participant were *per se* unlawful.

---

[6] https://www.cityofrochester.gov/article.aspx?id=21474844854

Accordingly, the First Amendment claims should be dismissed.

## **CONCLUSION**

**WHEREFORE**, it is respectfully requested that City Defendants' Motion Dismiss the Compliant with prejudice be granted, together with such other and further relief as the Court deems just and proper, including awarding to the City Defendants' the costs and disbursements of this proceeding.

DATED: January 18, 2022

s/Spencer L. Ash

_____

Spencer L. Ash, Esq., of counsel
Attorneys for Defendants
30 Church Street, Room 400A City Hall
Rochester, NY   14614
Telephone:  (585) 428-6699

# EXHIBIT S

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2968688

Book    Page    CIVIL

Return To:
Donna M. Brongo
99 Exchange Boulevard - Rm: 412
Rochester, NY 14614

No. Pages: 2

Instrument: MISCELLANEOUS DOCUMENT

Control #:          202201250276
Index #:            E2021007848

Date: 01/25/2022

Hushla, Nicole

Time: 9:49:13 AM

The City of Rochester
Baxter, Todd

Total Fees Paid:                    $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**
**JUDGE ARK, JOHN J**
**MOTION JUDGE ARK, JOHN J**



| | |
|---|---|
| **Nicole Hushla** | **Index No.**   E2021007848 |
| | **Motion**   2 |
| **- v. -** | |
| **The City of Rochester et al** | |

### COURT NOTICE

This matter has been assigned to Hon. John J. Ark and will be heard at Special Term on:

Thursday, March 10, 2022, at 10:00 a.m. on submission, unless oral argument is specifically requested.

Opposition papers, and/or cross-motion, shall be received by the Court no later than February 22, 2022, at 4:00 pm.  A reply shall be received no later than March 8,2022 at 4:00 pm.

Dated: 1/25/2022
Filed by: Donna Brongo

DATED 01/25/2022                                      FILED By Donna M. Brongo